**UNITED STATES ex rel. ROBERSON**
v.
**KEATING et al.**
**No. 49 C 1771.**

United States District Court
N. D. Illinois, E. D.

Dec. 6, 1949.

Abner F. Bond and Irving Goldstein, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for defendant.

SHAW, District Judge.

James Joseph Roberson by petition for habeas corpus complains that he is illegally detained and deprived of his liberty by commanding officers of the Great Lakes Naval Training Station. It is his contention that he is a civilian and not a member of the United States Navy. He bases his claim upon an honorable discharge issued to him on December 1, 1947, by an officer duly authorized to issue such discharges and that this discharge was duly recorded twenty-six days later in the office of the County Recorder of Cherokee County, Iowa. This is admitted, as are all other facts pertaining to this matter.

Before this discharge was issued, or simultaneously with its issuance, an oath of reenlistment was administered to the relator pursuant to an understanding that he was to have the benefit of an early discharge plus various benefits by way of special leave, transportation expenses, and so forth, if he would reenlist for an additional period of time. The relator fully performed his part of this transaction, and for a period of three days nothing happened that appears of record, so far as this record shows. On the 4th of December, three days after the issuance of the honorable discharge, relator was summoned to the administrative office and informed that he was not eligible for the administrative discharge and the reenlistment, notwithstanding the fact that the transaction had been completed as far as the relator was concerned, and notwithstanding the fact that he had received his certificate of honorable discharge and that the oath of reenlistment had been administered to him. At that point the officer of the Navy who had previously administered to the relator his oath of allegiance for his new enlistment destroyed the oath and told the relator that he was still in the Navy.

It is admitted of record that some three or four months after that the relator was charged with various violations of Navy regulations and for which he was given severe punishment by Navy court martial. He was sentenced to four

years confinement, to be dishonorably discharged and suffer all the consequences following such action. At that time he interposed a plea to the jurisdiction based upon his discharge, which plea was overruled and thereafter overruled by the highest Naval authority. Inasmuch as I consider that everything that happened after December 1, 1947, is immaterial in this case, no further recital of the record is necessary at this time.

The point to be decided is extremely narrow. If the discharge of December 1, 1947, was valid or only voidable it would deprive the Navy court martial of any jurisdiction whatsoever, and nothing that happened after that date by way of Naval procedure could possibly be valid. If that discharge was nonexistent or entirely void *ab initio* then this court would have no jurisdiction. Nothing more is to be decided here in these proceedings than this single question.

■ The question of whether an individual is in the armed forces or has been discharged is of serious import. The rights and privileges of one in the armed services vary greatly from the rights and privileges of a civilian. In the armed forces all persons are governed by naval or military law and are subject to the Articles of War, every act of Congress passed pursuant thereto and all lawful regulations passed by the heads of departments under the authority of the commander-in-chief. It is perhaps needless to say that this status is far different from that of a civilian. The civilian retains all of his rights under the Constitution, while the soldier, sailor or marine has been deprived of many, if not most, of them.

For example: the First Amendment grants civilians freedom of speech and assembly, which is denied to members of the armed forces.

The Fourth Amendment grants a civilian the right to be secure in his person, house, papers and effects, which are denied members of the armed forces.

The Fifth Amendment provides that no person shall be held to answer for a capital or otherwise infamous offense un-less on a presentment or indictment of a grand jury, nor be deprived of life, liberty or property without due process of law. A member of the armed forces has no such rights.

The Sixth Amendment grants the right to a speedy and public trial by impartial jury, whereas no such thing exists in the armed forces.

The Fourteenth Amendment provides no state shall deprive any person of life, liberty or property, without due process of law, which does not apply to any member of the armed forces.

The right to vote is impaired, except insofar as special provisions may have been made by the states or limited provisions by Congress.

When a person becomes a member of the armed forces his person an his life are in the control of the commander-in-chief and his subordinates. He may be sent to the farthest point on earth and subjected to the possibility of death or serious maiming, at the discretion of the commander-in-chief and his subordinate officers.

Other pertinent matters might be suggested, to the extent of prolixity, but enough has been said to indicate the point which the Court has in mind.

All of these impairments of individual liberty and constitutional rights are automatically cut away upon the issuance of an honorable discharge. The soldier or sailor is not only restored to full citizenship and full constitutional rights, but is also entitled to numerous benefits, both present and future. The recipient of an honorable discharge is entitled to numerous benefits under the G. I. Bill of Rights, 38 U.S.C.A. § 693 et seq. He is entitled to, and most of the soldiers have received, pay for their unused leave while in service in the armed forces. Many states, including Illinois and Iowa, which is the state of relator's residence, have granted special benefits to members of the armed services honorably discharged. There are also specific benefits by way of preference and employment and seniority rights under many circumstances. An honorable discharge also leaves a mem-

ber of the armed forces in a position to receive such future benefits as Congress is likely to confer upon those honorably discharged by way of pensions and special medical care or other benefits which are likely to occur in the future, if we judge from the past. This is taking no account of the personal honor and standing of the citizen in his own home town, which is not a trifle.

From this it may be seen that an honorable discharge is an extremely valuable property right as well as a personal right, and to deprive a person of an honorable discharge is to deprive him of property rights, as well as civil rights and personal honor. To destroy such a certificate of title, if we wish to call it that, in an arbitrary way on a unilateral proceeding, is contrary to our ideas of democracy. This country depends upon a citizen army and navy, and the rights of citizens are only to be temporarily impaired, to the minimum extent consistent with national safety. To make the army or the navy with their court martial boards sole judge of whether the person is or is not a member of the armed forces, would be to destroy all civil rights, which is unthinkable in a nation depending upon a citizen army. It is perhaps deplorable that courts should interfere in any way with Naval affairs, but when we come to the question of whether or not a citizen is or is not a member of the Navy, the point becomes basic and fundamental under our constitution and must be judged by the civil courts. This can and must be done without interference with such necessary rules or regulations as may be laid down for disciplinary purposes, but no such disciplinary action can be taken unless a person actually is a member of the armed forces, and in that event any judgment rendered would be void.

There is nothing in this record to indicate any act of fraud, deceit or misconduct on the part of this sailor in securing this honorable discharge. He was solicited to reenlist, offered the benefits of reenlistment, and did everything required of him to accomplish that purpose. The honorable discharge was delivered to him and signed by an officer authorized to do so and is in all respects regular on its face and on its back and has been recorded as above indicated. The most that can be said on behalf of the Navy is that two or three days after they had carried out this transaction by accepting the oath of reenlistment and delivering the discharge it was discovered that some inadvertence had intervened. It is claimed that they had miscalculated the expiration date of enlistment and that technically he did not come within the order of the Secretary of the Navy granting these benefits, and permitting this kind of a discharge coupled with reenlistment. I am not passing upon what the legal effect might have been had that discharge been procured through fraud or by any wrongful act on the part of the relator. That question is not in this case. So far as this relator is concerned, he fully performed his contract with the Navy, received his honorable discharge and at that moment the books were closed so far as he was concerned. All of the things that are charged against him subsequent to that date are beyond the jurisdiction of the Navy court martial and are therefore void.

The Court takes judicial notice of the fact that our country recently had armed forces of approximately ten million men and that many of those millions were discharged upon a so-called point system. In the working of this system it was necessary that the officers issuing discharges should depend upon company clerks and their division clerks to make the calculations necessary for discharge. It would be something passing a miracle if some mistakes were not made in calculating points and issuing honorable discharges. It could even be possible that some records may have been falsified and it is even conceivable that some point ratings were improperly obtained. In those cases of mistakes, which must have occurred, the man carrying an honorable discharge and entitled to be a civilian would be subject to arrest and summary

trial by the military if the position taken by the Navy in this case is sustainable.

It is my view that the clear-cut naked question of whether a man is or is not in the armed forces must be determined by the civilian courts under rules of due process.

It follows that the orders of commitment under which this man is held are void and that the relator should be discharged.

Other questions have been raised as to what procedure might or might not have been taken, and I am not passing on those questions because they are not presently before me nor could they be in a habeas corpus proceeding. It was suggested in argument that some action might be taken to cancel this certificate of discharge. I am doubtful of the efficacy of any such action in view of the total absence of anything to indicate any wrongdoing on the part of the relator, but that is a separate matter and nothing said herein is to be deemed any ruling upon nor in any way *res judicata* in such a situation, should it ever arise.

The present order of the Court is that the relator be discharged.