## UNITED STATES v. BRUNNER.
### No. 11577.

United States Court of Appeals
Sixth Circuit.

Dec. 5, 1952.

Norris W. Reigler, Asst. U. S. Atty., Louisville, Ky., David C. Walls, U. S. Atty. Louisville, Ky., on brief for appellant.

Wyatt, Grafton & Grafton and Ed P. Jackson, Jr., Louisville, Ky., for appellee.

Before SIMONS, Chief Judge and MARTIN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

The appeal involves the interpretation and scope of §§ 729 and 730 of Tit. 18 U.S.C.A. which authorize, subject to specific limitations, a suit against the United States in the Court of Claims for damages sustained as a result of an erroneous conviction and imprisonment. The sections involved are printed in the margin [1] and their application is denied in the circumstances hereinafter detailed. The precise question has not heretofore been considered by a reviewing court.

On October 16, 1947, the appellee, Brunner, was convicted in the United States District Court for the Western District of Kentucky for violation of the postal laws in obtaining by fraud and deception a registered letter not addressed to him, and abstracting and removing therefrom the sum of forty dollars ($40.00) in currency. Upon trial, the wife of the appellee gave evidence which, substantially, contributed to bringing about conviction. Brunner appealed to this court which on July 6, 1948 reversed the judgment, Brunner v. United States, 6 Cir., 168 F.2d 281. We held therein that Mrs. Brunner's testimony was incompetent and was erroneously admitted. We remanded the cause to the district court with direction that it be dismissed. Brunner was thereupon released after serving a portion of the sentence imposed.

We noted the earlier rule, that a wife was not a competent witness either *for* or *against* her husband, in a criminal case, but pointed out that in Funk v. U. S., 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, the Supreme Court had, for the first time, held that the wife of a defendant, on trial for a criminal offense, is a competent witness in his behalf. While her competency to testify against him was not there involved, we said, "It may be that 'in the light of reason and experience' the Supreme Court will find it desirable to remove the incompetency of a wife as a witness in a criminal case against her husband, but it has not yet done so." [168 F.2d 283.] In Fraser v. United States, 6 Cir., 145 F.2d 139, we had sus-

[1] "§ 729. Erroneous conviction; authorization of suit against United States

"Any person who, having been convicted of any crime or offense against the United States and having been sentenced to imprisonment and having served all or any part of his sentence, shall hereafter, on appeal or on a new trial or rehearing, be found not guilty of the crime of which he was convicted or shall hereafter receive a pardon on the ground of innocence, if it shall appear that such person did not commit any of the acts with which he was charged or that his conduct in connection with such charge did not constitute a crime or offense against the United States or any State, Territory, or possession of the United States or the District of Columbia, in which the offense or acts are alleged to have been committed, and that he has not, either intentionally, or by willful misconduct, or negligence, contributed to bring about his arrest or conviction, may, subject to the limitations and conditions hereinafter stated, and in accordance with the provisions of the Judicial Code, maintain suit against the United States in the Court of Claims for damages sustained by him as a result of such con-

viction and imprisonment. May 24, 1938, c. 266, § 1, 52 Stat. 438." [See 1948 Revised Judicial Code, 28 U.S.C.A. §§ 1495, 2513]

"§ 730. Same; certificate of innocence; admissibility; contents

"The only evidence admissible on the issue of innocence of the plaintiff shall be a certificate of the court in which such person was adjudged not guilty or a pardon or certified copy of a pardon, and such certificate of the court, pardon, or certified copy of a pardon shall contain recitals of findings that—

"(a) Claimant did not commit any of the acts with which he was charged; or

"(b) that his conduct in connection with such charge did not constitute a crime or offense against the United States or any State, Territory, or possession of the United States or the District of Columbia, in which the offense or acts are alleged to have been committed; and

"(c) that he has not, either intentionally, or by willful misconduct, or negligence, contributed to bring about his arrest or conviction. May 24, 1938, c. 266, § 1, 52 Stat. 438." [See 1948 Revised Judicial Code, 28 U.S.C.A. § 2513]

tained as admissible a voluntary disclosure made by a wife in a civil proceeding where the acts disclosed were in furtherance of a fraud to deprive the government of opportunity to collect lawfully imposed revenue.

It is not presently our purpose to cast doubt upon the soundness of our decision in the Brunner case. We were not ready then, and are not ready now, to hold that a wife may testify against her husband in a criminal case. This must await decision by highest authority. It is sufficient to say that we regard the law governing the marital privilege to be in a state of flux, in view of the developing concept of the independent political, social, and economic status of women in the modern era, and then to point out the distinction of the environment in which the question now arises from that in a criminal conviction.

In Funk v. United States, supra, [290 U.S. 371, 54 S.Ct. 213] the court noted the observation in Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991, "* * * today the tendency is to enlarge the domain of competency, and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. * * * steadily, one by one, the merely technical barriers which excluded witnesses from the stand have been removed, till now it is generally * * * true that no one is excluded therefrom unless the lips of the originally adverse party are closed by death, or unless some one of those peculiarly confidential relations, like that of husband and wife, forbids the breaking of silence." It noted also that in Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406, it had been said, "* * * the disposition of courts and of legislative bodies to remove disabilities from witnesses has continued, as that decision shows it had been going forward before, under dominance of the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to

be determined by the jury or by the court, rather than by rejecting witnesses as incompetent * * *." Following the Funk case, Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., was adopted providing that in the absence of an Act of Congress, the principles of the Common Law should govern "as they may be interpreted by the courts of the United States in the light of reason and experience." In Yoder v. United States, 80 F.2d 665, the Tenth Circuit went all the way in declaring that a wife's incompetence to testify against her husband had become obsolete and should be abolished. In United States v. Walker, 176 F.2d 564, 568, Judge Learned Hand speaking for the Second Circuit Court of Appeals, approved this doctrine with the reservation that we should await the choice of Congress between the conflicting interests involved or its general acceptance by the States. Finally, the whole subject of the developing law in respect to the privilege is brought to judicial attention by the careful opinion of Judge Lindley, speaking for the Seventh Circuit, in United States v. Lutwak, 195 F.2d 748, 756, as it is also ably discussed in this circuit in United States v. Graham, D.C., 87 F.Supp. 237, in the scholarly opinion of District Judge Levin.

We turn, therefore, to the circumstances in which the claim of privilege is now asserted. After our reversal of Brunner's conviction and his release under our mandate, he applied to the district judge for the certificate referred to in § 730, supra, in order to pursue a claim for damages in the Court of Claims authorized by § 729. He obtained a certificate under subsection (a), that he did not commit any of the acts with which he was charged. The court did not undertake to certify under subsections (b) and (c). The Court of Claims considered the original judgment inadequate to support an award inasmuch as it believed that the certification under subsection (a) could not stand alone but, in order that Brunner might have time to apply for an amended certificate containing the additional certifications under subsections (b) and (c), the court gave Brunner an extension of time in which to re-apply.

Brunner thereafter moved the district court for an amended certificate to incorporate in addition to the recitals under subsection (a) recitals under subsections (b) and (c). On January 5, 1952, the district court entered an order granting the amended certificate which the United States now seeks to have set aside. Its appeal is timely although an earlier appeal from the original order proved abortive. Subsequently, the Court of Claims in Brunner v. United States, 102 F.Supp. 909, being bound by the amended certificate, in view of § 730, to assess Brunner's damages because of his incarceration, albeit it did so reluctantly because of Brunner's long criminal record, assessed the damages at $500.00. The present challenge to the order granting the certificate of innocence is justiciable notwithstanding the Court of Claims' judgment because of Tit. 28 U.S.C.A. § 2515(b) which provides that the court may grant the United States a new trial and stay the payment of any judgment within two years after the final disposition of the suit, in the case of fraud, wrong or injustice to the United States, and the United States proposes to seek such review if it prevails here.

When the application for certificate was made by Brunner the court had before it nothing but the record in the criminal proceeding and an affidavit introduced by the government. Brunner produced no other evidence in support of his application. The government at the criminal trial had relied upon the evidence of a mail carrier who undertook to deliver a registered letter addressed to Mrs. Pence, a neighbor of the Brunners, in Louisville. He received no response at the door of Mrs. Pence but while in her yard a man in the yard adjoining, afterwards identified as Brunner, asked him who he was looking for. He replied that he had a registered letter for Mrs. Pence. The man said she wasn't at home but her sister is in the house and he would have her come and talk to him. The lady in the house said she was a sister of Mrs. Pence, would sign for the letter and give it to Mrs. Pence. The receipt was in evidence and it is not disputed that it was signed by Mrs. Brunner. Mrs. Brunner testified willingly. She remembered the letter carrier and that her husband was talking to him. Her husband then came into the house, told her to tell the carrier that she was Mrs. Pence's sister. She received the letter, brought it back into the house and put it into the china-cabinet from which her husband took it. She acted under the direction of her husband and when she asserted to him that she was going to tell about the letter he said, "If you do I will kill you." Brunner's defense was an alibi. He testified that he was working that day, never saw the carrier and, so, could not have conversed with him, known of the letter, or have taken it. In view of our reversal of the conviction, on the ground that Mrs. Brunner's testimony was incompetent, the court declined to consider it in passing upon the application for the certificate.

We turn to the statute. As already noted, it has not received interpretation by a reviewing court, but in United States v. Keegan, D.C., 71 F.Supp. 623, District Judge Barksdale made an exhaustive and scholarly study of its origin, purpose, and meaning. He came to the conclusion that while § 730 is entirely silent as to what procedure a court should follow in determining whether or not a petitioner is entitled to a certificate, the fact that the duty had been imposed upon the trial court would create the inference that the court would rely primarily on the record of the trial of the petitioner and that other relevant facts could be presented orally or by affidavit. Even though proofs in a criminal case failed to establish guilt beyond a reasonable doubt, it did not preclude the court from finding that the petitioner had failed to establish that he did not commit the offense charged in the indictment. The burden of proof in a criminal case is upon the government and it must overcome the presumption of innocence by proof beyond a reasonable doubt. The proceeding under the statute is not however a criminal trial. The petitioner is seeking monetary indemnity from the government and is the moving party who asks the court to find and certify a fact and the court should not grant the certificate unless it is satisfied

from the record before it that petitioner is altogether innocent.

 With these views we are in accord. A reversal for procedural error is not in any sense a finding that the petitioner did not commit the offense charged in the indictment. Moreover, the phrasing of the Act and its legislative history proclaim the care with which its framers guarded against opening wide the door through which the treasury may be assailed by persons erroneously convicted. Innocence of the petitioner must be affirmatively established and neither a dismissal nor a judgment of not guilty on technical grounds is enough. The statute does not aim to compensate every convicted defendant whose conviction is set aside by a reviewing court. It is not without significance that the certificate provided for in § 730 is designated as a "certificate of innocence."

We come now to the matter of Mrs. Brunner's evidence. The petitioner relied upon the record and nothing else. To it the government added the affidavit of Margaret Baker, mother of Mrs. Brunner, deposing that her daughter is not a sister of Mrs. Pence, nor in any way related by marriage to Mrs. Pence. In so far as Mrs. Brunner's evidence discloses the presence of Brunner at the time delivery of the registered letter was made, it is not within the privilege because the fact was known to the letter carrier, and was not within the bosom of the family relationship. Hughes v. Bates, Adm'r., 278 Ky. 592, 129 S.W.2d 138. If her testimony and that of the carrier is to be believed, the alibi of Brunner is completely destroyed.

Finally, we hold in the light of modern concepts that the evidence of Mrs. Brunner and the threat of Brunner to impose silence upon his wife is not in the present circumstances privileged. This is a civil case based upon a record necessarily relied upon by Brunner. He must stand or

fall by what it discloses. We said in Fraser v. United States, supra [145 F.2d 145], "a disclosure once made is irrevocable.[2] It is public property and may not be recalled." To recognize the privilege in present circumstances is to expand it beyond the considerations that gave it birth.

To impose silence upon the wife when the husband is on trial for crime may still be the command of the law, which holds him innocent until proved guilty beyond a reasonable doubt, a process to which she may not contribute. But a rule which compels silence when the husband undertakes to impose upon the government what may well be an unjust exaction, not yet effectuated, is a far different thing. Certainly, public policy does not sanction participation in a fraud either by speech or silence.

The certificate issued under the statute is set aside and the cause remanded to the district court with instructions to consider the entire record.

Reversed.

---

2. Section 606(1) of Carroll's Kentucky Civil Code of Practice, which makes confidential communications between husband and wife inadmissible, does not here control in view of Rule 43(a), Rules of Civil Procedure, 28 U.S.C.A., which provides for the widest rule of admissibility,

whether under Federal law or State rule, New York Life Ins. Co. v. Seighman, 6 Cir., 140 F.2d 930, 932. A Federal rule in this circuit is established by the Fraser case. Insofar as we are able to ascertain, it has not been disapproved.