**James Joseph ROBERSON**

v.

**The UNITED STATES.**

**No. 158-52.**

United States Court of Claims.

Oct. 5, 1954.

Clarence G. Pechacek, Washington, D. C., for plaintiff. Franklin E. Gill, Sioux City, Iowa, was on the brief.

John R. Franklin, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff brings this suit under the Act of June 25, 1948, 62 Stat. 941 and 978, 28 U.S.C. § 1495 and § 2513, to recover $5,000 (the statutory maximum) on account of damages allegedly sustained by him because of his erroneous conviction of offenses against the United States and imprisonment therefor.

Defendant urges: (1) That plaintiff's conviction by a Navy General Court Martial which was later held by a United States District Court not to have had jurisdiction of plaintiff's person is not such an unjust conviction as is contemplated by the unjust conviction statute; (2) that the certificate of innocence issued by the District Court is invalid, because that court had not tried the plaintiff, and, in the *habeas corpus* proceedings, inquired only into the legality of plaintiff's conviction and detention; and (3) that plaintiff has failed to prove any damages.

On October 27, 1942, at the age of 18 years, plaintiff enlisted in the United States Navy. He was in combat duty as an aerial gunner in the Pacific theatre and was awarded the Distinguished Flying Cross, four Air Medals, and a Navy Unit Commendation. Plaintiff's enlistment was terminated by honorable discharge on October 3, 1945. On July 9, 1946, plaintiff reenlisted in the Navy for a period of two years.

On December 1, 1947, more than seven months before the second enlistment would have expired, plaintiff was given an honorable discharge. Coincidentally with the receipt of this discharge, plaintiff signed reenlistment papers. This procedure was followed in what proved to be an unsuccessful attempt by Navy officers to comply with a regulation designed as an incentive to reenlistment by enlisted personnel whose terms of enlistment were approaching completion. Incentives to such reenlistment included a substantial cash bonus, some additional leave, and travel expenses.

On the morning of December 4, 1947, three days after plaintiff had signed reenlistment papers, he returned to barracks after a period of liberty. He had been engaged in an all-night card game and had been drinking beer. An officer unhappily chose this particular occasion to tell plaintiff that compliance with the reenlistment regulations had not and could not be had in plaintiff's case and that therefore plaintiff would not receive his bonus, leave, or travel allowance. An altercation arose between plaintiff and the officer during which plaintiff must have expressed himself more forcefully than Navy custom sanctions in exchanges between enlisted men and commissioned officers, for the officer ordered plaintiff under barracks arrest and to undergo a test for intoxication. Plaintiff returned to his barracks, and, in view of what the officer had told him about the reenlistment, plaintiff gathered up his gear, including his honorable discharge papers dated December 1, 1947, and, without advising or consulting with anyone, departed for home.

Nearly four months later, on March 26, 1948, plaintiff was tried and convicted by a Navy General Court Martial on charges of drunkenness, disobeying the lawful order of his superior officer, desertion, conduct to the prejudice of good order and discipline, breaking arrest, and unauthorized absence, all of which offenses were alleged by the Navy to have occurred after December 1, 1947 (the date on which he received his honorable discharge and signed the ineffectual reenlistment papers). The court martial sentenced plaintiff to be confined for a period of four years and to be dishonorably discharged.

Upon review by the Secretary of the Navy, the period of plaintiff's confinement was reduced to two years, and a bad conduct discharge was substituted for the dishonorable discharge. Thereafter, upon the recommendation of the Navy Sentence Review and Clemency Board, approved by the Acting Secretary of the Navy, an order was issued that plaintiff be restored to duty if his conduct was satisfactory on six months' probation.

Plaintiff was imprisoned from March 26, 1948 to December 15, 1948, a period

of 8 months and 19 days. The end of his confinement came as a result of his release from the Navy Disciplinary Barracks, Portsmouth, New Hampshire, for restoration to duty in Boston, Massachusetts, subject to probation. However, instead of reporting for duty, plaintiff, relying on his December 1, 1947 honorable discharge, again went home.

Some nine months later, on September 19, 1949, plaintiff was again arrested and placed in confinement by the Navy on a charge of desertion. He remained in prison until December 8, 1949, a period of 2 months and 18 days, when he was released upon order of the District Court of the United States for the Northern District of Illinois in *habeas corpus* proceedings. U. S. ex rel. Roberson v. Keating, D.C., 121 F.Supp. 477. The District Court found and held that plaintiff had received a valid honorable discharge on December 1, 1947, which placed his person beyond the jurisdiction of the Navy to try him for acts committed subsequent to that date.

Thereafter, plaintiff applied to the same District Court for a certificate of innocence fulfilling the requirements of section 2513 of title 28 of the United States Code, in order that he might pursue his remedy under the provisions of section 1495 of that title in the United States Court of Claims. On February 19, 1952, Judge Philip L. Sullivan issued a document entitled "Certificate of Innocence" which recited that application therefor had been made under section 2513 for the purpose of suit under section 1495 of title 28. After reviewing certain facts relative to the Navy court martial and the issuance of the writ of *habeas corpus*, the judge closed with the following statement:

"Now Therefore, pursuant to said Section 2513 of Title 28, I hereby certify that the relator was not guilty of the offenses of which he was convicted, and for which he served confinement for eight months, and that said conviction was set aside by this Court and held to be void, and that the acts, deeds or omissions of the relator in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and that the relator did not by his misconduct or negligence cause or bring about his own prosecution."

On April 8, 1952, plaintiff filed his petition in the Court of Claims asking for relief under the provisions of title 28, sections 1495 and 2513 of the United States Code.[1]

Defendant first urges that the conviction of plaintiff by a Navy General Court Martial, which was later held by a United States District Court not to have

---

1. In the enactment of the judicial code, the Act of June 25, 1948, 62 Stat. 941, section 1495 provides:

"Damages for unjust conviction and imprisonment; claim against United States

"The Court of Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."

Section 2513 provides:

"Unjust conviction and imprisonment

(a) Any person suing under section 1495 of this title must allege and prove that:

"(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

"(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

"(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

    *        *        *        *        *

"(e) The amount of damages awarded shall not exceed the sum of $5,000."

had jurisdiction of plaintiff's person, was not such an unjust conviction as was contemplated by sections 1495 and 2513 of title 28. The only case cited by either party directly in point on the question is McLean v. United States, D.C.1947, 73 F.Supp. 775. Defendant concedes that the holding in that case is squarely against defendant's position herein, but urges that the decision is erroneous.

In McLean v. United States, supra, the plaintiff, suing in the District Court for damages under 18 U.S.C. §§ 729, 730,[2] had been convicted of manslaughter by United States Navy Court Martial and sentenced to five years imprisonment and to a dishonorable discharge. In his District Court action plaintiff alleged that his conviction had been set aside by the Judge Advocate General of the Navy who had adjudged that plaintiff was not guilty of the crime of which he had been convicted, that his conduct in connection with the charge did not constitute a crime against the United States, etc., and that he had not in any way contributed in bringing about his own arrest and conviction. The government contended that the unjust conviction statute did not cover court martial convictions. The District Court held that the statute does cover court martial convictions as well as civilian court convictions because (1) the substance of the statute is that any person unjustly convicted of an offense against the United States may maintain suit against the United States for damages sustained as a result of such unjust conviction and imprisonment; (2) that a person tried by Navy Court Martial is tried for an offense against the United States because the basis for any prosecution in such proceeding is necessarily a violation of the Articles for the Government of the Navy enacted by Act of Congress; and (3) that a violation of an Act of Congress is an offense against the United States. The court also held that a Navy Court Martial and the review of its action by the Judge Advocate General are judicial proceedings within the meaning of the word "court" as used in the statute, especially when the purpose of the statute is kept in mind. At pages 778 and 779, of 73 F. Supp., Judge Wyche stated:

"This Act is a remedial act designed by a fair-minded government as a means of at least partially righting an irreparable wrong done to one of its citizens. It has the beneficent purpose of attempting to compensate, as well as money can compensate for such an injury, the plaintiff for the loss of his liberty through an error on the part of his government. One convicted in a court martial is just as effectively deprived of his liberty as one convicted in the district court of the United States. The same sovereign is responsible for the wrong that has brought about his suffering. It is, therefore, my opinion that the Act covers a conviction in a court martial."

We find nothing in the legislative history of the basic legislation, Act of May 24, 1938, 52 Stat. 438, 18 U.S.C. §§ 729–732, to refute Judge Wyche's conclusions. On the contrary, that history and Judge Barksdale's decision in United States v. Keegan, D.C., 71 F.Supp. 623, analyzing at length the statute and its history, supports the soundness of Judge Wyche's decision. Accordingly, we hold that unjust convictions and imprisonments by courts martial are within the purview of the unjust conviction statute.

Defendant next contends that the certificate of innocence issued to plaintiff by the District Court should not be accept-

2. According to the Reviser's Note, sections 1495 and 2513 were based on sections 729–732 of Title 18 U.S.C., Act of May 24, 1938, 52 Stat. 438, which latter sections were consolidated and rewritten "to clarify ambiguities". The District Court has held that it has concurrent jurisdiction with the Court of Claims to award damages in cases arising under the unjust conviction statute. McLean v. United States, supra.

ed by the Court of Claims as the necessary statutory proof of plaintiff's innocence. Defendant says that the District Court lacks jurisdiction to issue a certificate of innocence to any person whose conviction by military court martial has been set aside by a writ of *habeas corpus*, because the *habeas corpus* proceedings were not concerned with guilt or innocence within the meaning of the unjust conviction statute.

In Hadley v. United States, 66 F.Supp. 140, 106 Ct.Cl. 819, cited by defendant as authority for its argument, Hadley relied upon the District Court order in his *habeas corpus* proceedings as constituting the necessary statutory proof of his innocence in the Court of Claims. In dismissing Hadley's petition, this court merely held that the *habeas corpus* order did not contain all the necessary statutory recitals concerning his innocence and did not decide whether the order would have been sufficient proof of innocence had it contained such recitals.[3]

Plaintiff in the instant case is not relying upon the order in his *habeas corpus* proceeding as proof of his innocence. In an entirely separate proceeding instituted some two years after the issuance of the *habeas corpus* order, plaintiff made application to the same District Court for a certificate of innocence for the purpose of seeking damages in the Court of Claims under the unjust conviction statute. This proceeding was concerned solely with the matter of plaintiff's innocence and as a result of it the District Court upon the record and its decision issued a certificate containing all the necessary statutory recitals.

The unjust conviction statute gives to the court which sets aside a prisoner's conviction the power to entertain his application for a certificate of innocence. There is no indication in the statute or its legislative history that a person whose court martial conviction has been set aside by writ of *habeas corpus* is less entitled to a hearing upon his application for a certificate of innocence than the person whose civilian court conviction has been set aside by an appellate court on grounds having nothing to do with his guilt or innocence. See Andolschek v. United States, 77 F.Supp. 950, 111 Ct. Cl. 567, discussed hereinafter. We think that the District Court had jurisdiction to entertain the application of either person and to issue a certificate of innocence if, in the opinion of the judge, the applicant has established his innocence within the meaning of the statute.

If it is defendant's position that the District Court judge should not have issued a certificate of innocence to this plaintiff on the basis of the judgment in the *habeas corpus* proceeding because that proceeding, as defendant here contends, had nothing to do with plaintiff's guilt or innocence, defendant is not attacking the *jurisdiction* of the District Court to issue the certificate but is rather attacking the soundness of the court's decision to act favorably upon plaintiff's application. Whether or not the certification of innocence was warranted by the evidence[4] considered by the District Court judge is a question going to the merits of the issue of the applicant's innocence and not to the power of the judge to pass upon it. In West Coast Exploration Co. v. McKay, D.C.Cir., 213 F.2d

---

3. In Weiss v. United States, 91 F.Supp. 742, 120 Ct.Cl. 1, and in Roberts v. United States, 126 Ct.Cl. 947, also relied on by defendant, the petitions were dismissed because the necessary statutory recitals concerning innocence did not appear in any documents submitted to this court.

4. We do not know, nor are we properly concerned with, what evidence the District Court relied, upon, whether it was

the record in the *habeas corpus* proceeding, the record in the court martial proceeding, or affidavits and oral testimony. The statute does not prescribe any procedure to be followed by the District Court in passing upon the application for certificates of innocence, nor does it indicate whether the proceeding shall be *ex parte* or adversary, apparently leaving to the discretion of the District Court judge the kind of hearing to be held.

582, certiorari denied 347 U.S. 989, 74 S.Ct. 850, the court said:

"A court is said to have jurisdiction, in the sense that its erroneous action is voidable only, not void, when the parties are properly before it, the proceeding is of a kind or class which the court is authorized to adjudicate, and the claim set forth in the paper writing invoking the court's action is not obviously frivolous. * * *" 213 F.2d at page 591.

The Circuit Court quoted from the case of Brougham v. Oceanic Steam Navigation Company, 2 Cir., 205 F. 857, as follows:

" 'The jurisdiction with which we are concerned is the power to hear and determine a cause. It is not limited to making correct decisions but includes power to decide wrong as well as right. As applied to a particular controversy it is the power to hear and determine the subject-matter of that controversy. And by this is meant the power to hear and determine causes of the class to which the particular controversy belongs. It is the power to act upon the general question in its relation to the facts presented; to adjudge whether such facts call for the exercise of the abstract power.' (205 F. at page 859.)"

If the District Court judge in the instant case erred on the merits in granting or denying the issuance of the certificate, his decision is not open to collateral attack in the Court of Claims. It should be questioned, if at all, on appeal to the Circuit Court of Appeals which has appellate jurisdiction over the District Courts.

In Rigsbee v. United States, 92 U.S. App.D.C. 244, 204 F.2d 70, Rigsbee appealed to the Circuit Court from the District Court's refusal to issue a certificate of his innocence. The Circuit Court entertained the appeal and affirmed the action of the District Court judge but noted in so doing that because the issuance of the certificate had been left to the discretion of the District Court judge, the appellate court should review only where the decision was completely capricious and without any rational basis. The Circuit Court had the following to say on this matter:

"As we have said, whether to issue a certificate of innocence is left to the discretion of the trial judge. The statute calls for his opinion on a factual matter, and does not in terms afford appellate review. Whether his expression of opinion is a final order of the District Court, open to appeal for that reason, might well be questioned. It could be said that, strictly speaking, the refusal to certify innocence is not an order of the District Court but a mere expression of the judge's personal conviction which Congress called upon him to give. On the other hand, were there no appeal, a wholly arbitrary refusal could unjustly prevent the assertion of a meritorious claim. Legislative clarification of the statute seems desirable." 204 F.2d at page 73, footnote 3.

In United States v. Brunner, 6 Cir., 200 F.2d 276, the Government appealed from the District Court's decision to issue a certificate of innocence to Brunner. On the basis of the certificate, Brunner had already secured a judgment of $500 from the Court of Claims, Brunner v. United States, 102 F.Supp. 909, 122 Ct. Cl. 48, although this court entertained lively doubts about Brunner's innocence within the meaning of the unjust conviction statute. The Circuit Court, finding jurisdiction to entertain the appeal in 28 U.S.C. § 2515(b), held that the District Court had erred in issuing the certificate without taking into consideration certain testimony of Brunner's wife contained in the record of Brunner's criminal trial. The Circuit Court pointed out that although Brunner's conviction had been properly reversed on the ground that his wife's testimony had been improperly admitted and could not support the judg-

ment of conviction, it was both proper and necessary for the District Court to consider such testimony in deciding whether Brunner was entitled to a certificate of innocence which would form a basis for his suit against the government for damages under the unjust conviction statute. The cause was remanded to the District Court with instructions to reconsider its decision in the light of the whole record including the testimony of Brunner's wife. Subsequently, the District Court set aside its previously issued certificate of innocence and the Court of Claims then granted defendant a new trial, and vacated its earlier judgment for Brunner on the ground that the record no longer contained support for the allegations of innocence contained in the petition. 110 F.Supp. 479, 124 Ct. Cl. 643.

In Andolschek v. United States, 77 F. Supp. 950, 111 Ct.Cl. 567, the issues were closely analogous to those in the instant case. Andolschek had not obtained a formal certificate of innocence but relied upon findings and recitals contained in the District Court's judgment and decree dismissing the indictment against him. Those recitals met all the requirements of the unjust conviction statute concerning innocence but the defendant urged that the Court of Claims should not accept such recitals as proof of innocence because the judgment and decree containing them had been issued upon mandate of the Circuit Court of Appeals which had reversed Andolschek's conviction on grounds having nothing to do with Andolschek's guilt or innocence within the meaning of the unjust conviction statute. It was defendant's position that Andolschek was not entitled to the certificate and that the District Court judge had erred in granting it. The Court of Claims held that it could not go

behind the findings and recitals of the District Court nor inquire into the record in Andolschek's case in other courts on the question of his guilt or innocence because the unjust conviction statute clearly provides that the only evidence admissible in the Court of Claims on the issue of a plaintiff's innocence shall be a certificate of the court in which he was found not guilty.[5]

■ We are of the opinion that the District Court had jurisdiction to entertain plaintiff's application for a certificate of innocence and to issue that certificate upon being satisfied that plaintiff was in fact innocent within the meaning of the unjust conviction statute. Inasmuch as the certificate is conceded by defendant to be authentic, and it contains all the recitals required by the statute, this court is bound by such recitals on the question of plaintiff's innocence unless that certificate is set aside upon order of the Circuit Court of Appeals.

Defendant urges that plaintiff's proof of damages is incompetent and too remote and speculative to support any award whatsoever. The Commissioner of this court has found that plaintiff was damaged in excess of the statutory limit of $5,000 and we hold that the record fully supports that finding (finding 9). We shall discuss briefly defendant's exceptions to the various items of damage found by the Commissioner and our reasons for deeming those exceptions to be without merit.

Defendant excepts to the Commissioner's finding that plaintiff suffered loss of earning power while awaiting and undergoing trial and during his confinement by the Navy. Defendant says that up to the time of his release on the writ of *habeas corpus*, plaintiff had no civilian occupation from which he could have made a

---

5. The legislative history of the 1938 act makes it quite clear that the question of plaintiff's innocence is not to be tried in the Court of Claims. In H.Rep. 2299, 75th Cong., 3d Sess., the following statement appears:

"(2) In the House bill, innocence must be established by the courts or pardoning

authority before a claim for damages is presented to the Court of Claims, which only hears the question of damages. The Senate bill would give the Court of Claims jurisdiction to try the facts of the applicant's innocence."

The provisions of the House bill were enacted into law.

864

living and that the only trade he knows today, i. e., the printing trade, he was later taught by the Air Force.

The record reveals that prior to his first enlistment in the Navy, plaintiff had become an experienced and competent farmer, having been in nearly complete charge of the family's fair sized farm for two years while his father was working in a war plant some 65 miles from home. Between plaintiff's first and second confinement for desertion, plaintiff worked for three different farmers in Iowa, earning $110 per month plus room, board and laundry. Plaintiff was also a well-trained and experienced machinist. Following his graduation from high school, he completed a 400-hour machinist course. For the month and a half before he enlisted in the Navy, plaintiff worked for the Ertel Machine Shop in Indianapolis, Indiana, earning $30 a week. During plaintiff's first enlistment in the Navy, he completed two courses in aviation mechanics, receiving a certificate in each instance, and throughout his whole Navy career he served as an aviation mechanic. Everything in plaintiff's record reveals him to have been capable and industrious and it is reasonable to conclude that but for his arrest and conviction by the Navy he would have been able to secure and hold good jobs either as a farmer or as a mechanic. It is worthy of note that plaintiff commenced his own training in the printing trades prior to the time the Air Force assigned him to the print shop. At that time plaintiff had already held jobs on two newspapers, earning $55 per week.

Defendant also excepts to the Commissioner's finding that plaintiff's pecuniary losses resulting from his arrest and confinement by the Navy were of a continuing nature. It appears to be defendant's position that any continuing loss of earning power was due to plaintiff's instability as evidenced by his frequent job changes and his curious career in the Air Force. It was the Commissioner's opinion, with which we agree, that plaintiff's so-called emotional instability was the direct result of his conviction and his

imprisonment in a Navy penitentiary. The transcript of testimony taken at the trial reveals that plaintiff was even then laboring under nervous tension aggravated by feelings of outrage and disgrace which, unless relieved, may continue to hamper his efforts to settle down and live a normal life.

Defendant also excepts to the finding that plaintiff suffered nonpecuniary losses due to his deprivation of liberty while undergoing trial by the court martial and during confinement, and to the humiliation attendant thereto. Defendant suggests that the instant plaintiff's familiarity with prison walls (military and civilian) prior to his conviction by the Navy should serve to mitigate defendant's liability for damages on the authority of this court's decision in Brunner v. United States, 102 F.Supp. 909, 122 Ct.Cl. 48. In our opinion nothing could be more inapposite than the Brunner case in the light of the facts in the instant case. Mr. Brunner had spent all or part of every year from 1935 to 1947 in prison. He was a chronic law violator and had been convicted of being drunk and disorderly, of petty larceny and vagrancy, attempted homicide, motor vehicle theft, parole violations, robbery, embezzlement, skipping bond, violation of the mail statutes, and of grand larceny. In view of that history, the court was of the opinion that Brunner's imprisonment as a result of the alleged unjust conviction could not have been too humiliating an experience. The instant plaintiff's record for misbehavior up to the time of his conviction consisted of a deck court martial and a ten-day sentence in the hospital brig for unauthorized absence while he was convalescing from a shoulder operation during his second term of enlistment, plus an incident which occurred while he was on leave from the Navy in the fall of 1947, when plaintiff and several others were picked up by the Indianapolis police on suspicion of carrying concealed weapons. After being kept in jail over night, the charge against plaintiff was dismissed for insufficient evidence.

In January 1949, following plaintiff's first confinement by the Navy in New Hampshire, plaintiff was booked for investigation by the Sioux City, Iowa, police and was released after 72 hours without any charges being lodged.

Under these circumstances, we do not believe that defendant has grounds for mitigation of damages as it did in the Brunner case.

Further on the question of damages, defendant contends that plaintiff's unreasonable and improbable conduct should serve to mitigate defendant's damages. Unless that conduct constituted negligence in bringing about his own arrest and conviction, we fail to see how it is material, and the District Court judge has certified that plaintiff did not bring about his arrest by his own misconduct or neglect. Defendant's references to plaintiff's admittedly unhappy career in the Air Force are adequately answered by footnote (4) to finding 8 in which the Commissioner concluded that all incidents tending to show instability occurred *after* plaintiff's conviction and imprisonment by the Navy. Up to that time plaintiff was a normal American farm boy whose record in World War II was one of courage unmarred by misbehavior. Under the circumstances, it is reasonable to conclude that his later instability was caused by his reaction to his unjust conviction and imprisonment by the Navy and as such is an element of his damages rather than a factor mitigating defendant's liability for damages. We are not convinced that plaintiff's conduct was either unreasonable or improbable in view of his state of extreme anxiety and depression brought on by the Navy's treatment of him. Nor do we think it at all improbable that a young man of his background and character would be profoundly shocked and unsettled by his experiences.

On the basis of the record in this case we hold that plaintiff sustained damages in excess of $5,000. In view of the statutory limitation on the amount

of award, judgment for $5,000 will be entered in plaintiff's favor.

It is so ordered.

WHITAKER, Judge (concurring).

The unjust conviction statute requires that the certificate of innocence be issued by the court having jurisdiction to try that fact. A court hearing a petition for *habeas corpus* has no jurisdiction to pass on the petitioner's guilt or innocence.

However, it necessarily follows from the court's finding in this case that the Court Martial had no jurisdiction to try plaintiff because his enlistment had expired when the offense charged was committed, that plaintiff could not have been guilty of the particular offenses charged, except one. Those offenses were: (1) disobeying the orders of his superior officers; (2) desertion; (3) conduct to the prejudice of good order and discipline; (4) breaking arrest; (5) unauthorized absence; and (6) drunkenness. Since on *habeas corpus* it was held that plaintiff's enlistment had expired when these alleged offenses were committed, plaintiff could not have been guilty of any of them, except the last.

Plaintiff could have been guilty of the drunkenness charge, although his enlistment had expired. I think, though, in the interests of justice, this charge may be disregarded. I have no doubt plaintiff would never have been charged with this offense had he not been charged with the others. They just "threw the book at him."

While technically the *habeas corpus* court did not have the right to try plaintiff's guilt or innocence, yet, since the effect of its holding was to find plaintiff innocent, I think, under a liberal construction of the statute, it had the right to issue the certificate.

It will be noted that under the first provision of the statute it was not necessary that the district judge find that the acts were not committed, but only that

an offense was not committed. That court had jurisdiction to hold that an *offense* was not committed; in fact, in granting *habeas corpus*, it necessarily held that plaintiff was innocent of any offense since it was shown that he was not in the military service at the time of the alleged acts. The court, therefore, had complete jurisdiction to hold that he was innocent of any offense, and could, therefore, certify to that fact.

It does not follow from this that it would have jurisdiction to do so as to all offenses.

Under subdivision 2, offenses against State law are included, but under State law no offense was committed unless the charge of drunkenness is to be regarded as such an offense as would preclude an otherwise meritorious action.

Giving the statute a liberal construction, as I think should be done in this case, I think the court's decision is correct, and I concur.

JONES, Chief Judge, concurs in the foregoing opinion.

LARAMORE, Judge, took no part in the consideration or decision of this case.

MADDEN, Judge (dissenting).

My reason for not agreeing with the opinion of the court is that I think that the District Court of the United States for the Northern District of Illinois did not have jurisdiction to make the "Certificate of Innocence" upon which the plaintiff's right to recover depends.

Section 2513 of Title 28 of the United States Code requires, so far as pertinent to this case, that one who sues for damages for unjust imprisonment prove that his conviction has been reversed or set aside on the ground that he was not guilty of the offense for which he was convicted, or that on a new trial or a rehearing he was found not guilty, and that the absence of guilt be shown by the record or certificate of the court setting aside or reversing the conviction.

The findings of this court as well as the narrative of the opinion show that the plaintiff did all the physical acts of which he was charged and convicted by the Navy court martial. The District Court, in the *habeas corpus* proceeding, had no jurisdiction to review the correctness of the court martial's decision as to the facts of the plaintiff's conduct, and, so far as appears, the court did not undertake any such review. The court merely held that the court martial had no jurisdiction to try the plaintiff, since the plaintiff had been discharged from the Navy before the acts for which he was tried were committed.

I think that Section 2513 contemplates that the court in which the conviction, the nullification of which is to give rise to a claim for damages, is a court having jurisdiction over the merits of the conviction. The fact that one has been tried and convicted in a court not having venue of the offense, and has for that reason had his conviction reversed, would not appeal to the sense of fairness which Congress expressed in Section 2513. Congress was interested in the question of whether the convicted person had done the things of which he was convicted, and not in the question of whether he had, erroneously, been tried in the wrong tribunal.

This case is, of course, different from the case of the ex-soldier who has committed murder or some other crime, has been convicted by a court martial, and has been freed from imprisonment on a writ of *habeas corpus* by a civil court on the ground that the court martial had no jurisdiction to try one who was no longer in the Army. In this case the conduct of which the plaintiff was convicted by the court martial may not have been crimes at all, if, as the District Court concluded in the *habeas corpus* proceeding, the plaintiff was no longer in the Navy. This difference was, no doubt, the reason why the District Court essayed to give the plaintiff a certificate of innocence. But I think that this difference did not have the effect of conferring jurisdiction upon the District

Court to make any decision whatever as to the factual or legal merits of the plaintiff's conviction, when the only proceeding before the court concerned the jurisdiction of the court martial to try the plaintiff.

In re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 344, 90 L.Ed. 499, the Supreme Court said:

"We also emphasized in Ex parte Quirin [317 U.S. 1, 63 S.Ct. 1, 2, 87 L.Ed. 3], as we do here, that on application for habeas corpus we are not concerned with the guilt or innocence of the petitioners. We consider here only the lawful power of the commission to try the petitioner for the offense charged. In the present cases it must be recognized throughout that the military tribunals which Congress has sanctioned by the Articles of War are not courts whose rulings and judgments are made subject to review by this Court. See Ex parte Vallandigham, 1 Wall. 243, 17 L.Ed. 589; In re Vidal, 179 U.S. 126, 21 S.Ct. 48, 45 L.Ed. 118; cf. Ex parte Quirin, supra, 317 U.S. 39, 63 S.Ct. 16, 87 L. Ed. 3. They are tribunals whose determinations are reviewable by the military authorities either as provided in the military orders constituting such tribunals or as provided by the Articles of War. Congress conferred on the courts no power to review their determinations save only as it has granted judicial power 'to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty.' 28 U.S.C. §§ 451, 452, 28 U.S.C.A. §§ 451, 452. The courts may inquire whether the detention complained of is within the authority of those detaining the petitioner. If the military tribunals have lawful authority to hear, decide and condemn, their action is not subject to judicial review merely because they have made a wrong decision on disputed facts. Correction of their errors of decision is not for the courts but for the military authorities which are alone authorized to review their decisions. See Dynes v. Hoover, 20 How. 65, 81, 15 L.Ed. 838; Runkle v. United States, 122 U.S. 543, 555–556, 7 S.Ct. 1141, 1145, 1146, 30 L.Ed. 1167; Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; Collins v. McDonald, 258 U.S. 416, 42 S.Ct. 326, 66 L.Ed. 692. Cf. Matter of Moran, 203 U.S. 96, 105, 27 S.Ct. 25, 36, 51 L.Ed. 105."

I have no quarrel with the decision in McLean v. United States, D.C., 73 F. Supp. 775. There the certificate of innocence was alleged to have been issued by the Judge Advocate General of the Navy, the official having jurisdiction to review the factual and legal merits of the conviction. I would not find it necessary to decide whether the unjust conviction statute covers court martial convictions. But if I did so decide, I would further decide that the necessary certificate of innocence must issue from a tribunal having jurisdiction to review the conviction on its merits.

Concerning the moralities of the case, I think that the plaintiff must have been aware, when he left the Navy barracks, that, in the view of the Navy, his premature discharge and his simultaneous reenlistment were both part of the same transaction, and that, the reenlistment having been found invalid, the discharge was likewise ineffective. That must have been the deliberate view of the Navy when it instituted and carried through the court martial proceedings. The conduct of the plaintiff in deciding this question for himself and abruptly going home was, it seems to me, reckless in the extreme, and a practical invitation to the Navy to prosecute him. This reckless conduct antedated his trial and imprisonment by the Navy, to which this court attributes all the plaintiff's later difficulties. It seems to me that the plaintiff's later erratic conduct, which directly brought on his difficulties and damages, was of the same sort as and no more reckless than what he did before the sup-

posed cause of his later conduct occurred. *Post hoc ergo propter hoc* is an unsafe doctrine even when the sequence of events makes it possible to apply it. But when substantially the same thing has occurred before, as well as after, the supposed cause of the later event, the doctrine has no logical application at all.