**Floyd J. OSBORN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19929.**

United States Court of Appeals
Fifth Circuit.

Sept. 10, 1963.

M. B. Montgomery, Jackson, Miss., for appellant.

Robert Hauberg, U. S. Atty., Jackson, Miss., John G. Laughlin, David L. Rose, Edward Berlin, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before RIVES and WISDOM, Circuit Judges, and BOOTLE, District Judge.

WISDOM, Circuit Judge.

The questions for decision in this case relate to the scope and meaning of the Unjust Conviction Statute, 28 U.S. C.A. § 2513, 62 Stat. 941.[1] The plain-

1. (a) Any person suing under section 1495 of this title must allege and prove that:
(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was con-
victed, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned

tiff's theory of the case is that the statute applies to a court-martial conviction set aside on a habeas corpus petition not because of the petitioner's innocence but because of lack of jurisdiction in courts-martial to try a capital offense in time of peace.[2] We hold that the statute applies to unjust convictions of courts-martial, but that the plaintiff failed to comply with the statutory requirements for recovery.

The basic facts are not disputed. In 1944 a United States Army court-martial found Floyd J. Osborn guilty of striking an officer. The court sentenced him to fifteen years imprisonment. Three years later, at Fort Leavenworth, Kansas, Osborn and three others were charged jointly with a violation of the 92d Article of War,[3] the premeditated murder of a fellow prisoner. A general court-martial found the three men guilty and sentenced them to confinement at hard labor for life. Later, the Adjutant General remitted the unexpired portion of Osborn's sentence for the offense of striking an officer.

The 92d Article of War provides that "no person shall be tried by court-martial for murder or rape committed within the geographical limits of the States of the Union and the District of Columbia in time of peace." In 1959, the Supreme Court held that for purposes of Article 92 this provision deprived a court-martial of jurisdiction over an alleged conspiracy to commit murder on June 10, 1949, at Camp Cooke, California, on the finding that June 10, 1949 was "in time of peace" within the contemplation of the limitation. Lee v. Madigan, 1959, 358 U.S. 228, 79 S.Ct. 276, 3 L.Ed.2d 260. Relying on this decision, one Herman Snow, one of the co-defendants with Osborn in the murder case, filed a habeas corpus petition in the United States District Court for the Western District of

upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory, or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received. * * *

Section 1495, referred to in the above statute confers jurisdiction on the Court of Claims to render judgment on any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned.

2. Jurisdiction in the district court was based on 28 U.S.C.A. § 1346(a) and 28 U.S.C.A. § 1495. Section 1346(a) reads:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

\* \* \* \* \*

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress. * * *"

3. At that time 41 Stat. 805, 10 U.S.C.A. § 1564; now the 118th Article, 10 U.S.C.A. § 918.

The Articles of War were replaced by the Uniform Code of Military Justice, effective May 5, 1950. Article 92 was supplanted by Articles 118 and 120. These articles do not include the phrase, "in time of peace," and today military personnel may be tried by court-martial for the crime of murder committed in the United States in peace or wartime. 10 U.S.C.A. § 918 (1959). This apparently was the intention of Congress. "The territorial limitation in peacetime has been removed, thus allowing the armed forces to try murder and rape cases in all places, and at all times." Drafter's comment to Art. 118, Uniform Code of Military Justice, Index and Legislative History, Uniform Code of Military Justice 1232 (1950); see also Drafter's comment to Art. 120, op. cit. supra.

"Articles 118 and 120 make drastic revision in certain present practices. * * * These new articles would make such offenses [peacetime rapes and murders] punishable by general court-martial." Prepared Statement submitted during Senate Hearings by Richard H. Wels, Chairman, Special Committee on Military Justice, New York County Lawyer's Association, Index and Legislative History, Uniform Code of Military Justice 209 (1950).

Missouri. The court granted the petition:

> Nothing had transpired between May 2, 1947, and June 10, 1949, to change the status of the nation from one "in time of peace" to one "in time of war." If the latter period was "in time of peace" I can reach no other conclusion than that the earlier period was also "in time of peace," and that the courts-martial which tried and convicted the petitioner here for the offense that was committed on May 2, 1947, was entirely without jurisdiction under the provisions of the 92d Article of War.[4]

Osborn thereupon instituted habeas corpus proceedings in the United States District Court for the District of Kansas. The court ordered his discharge on the finding that Lee v. Madigan and Snow v. United States were controlling.[5]

May 16, 1961, Osborn brought this suit against the United States claiming damages for his allegedly unjust conviction and imprisonment. After overruling the plaintiff's motion for summary judgment, the district court heard the case without a jury. The court found that the record showed that the plaintiff's conviction had not been reversed or set aside upon the stated ground of innocence and unjust conviction, and that Osborn had failed to show that he had not committed the acts with which he was charged. The court dismissed the suit without prejudice.

The appeal raises three questions:

(1) Is the Unjust Conviction Statute applicable to a conviction by a court-martial?

(2) Does the order granting the appellant's habeas corpus petition on the ground of lack of jurisdiction in the court-martial satisfy the statutory requirement that appellant was not guilty of the offense of which he was convicted?

(3) Has appellant sustained his burden of showing that he did not commit any of the acts charged; that his acts did not constitute a criminal offense; and that he did not by misconduct or neglect cause or bring about his own prosecution?

### I.

 The Government points out at the beginning of its argument the familiar principle that where the sovereign has given its consent to be sued, suits against it will be allowed only if they are clearly within the scope of the consent. United States v. Michel, 282 U.S. 656, 659, 51 S.Ct. 284, 75 L.Ed. 598 (1931). Limitations on governmental consent to suit must be strictly observed. Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). In arguing that the Unjust Conviction Statute does not apply to convictions by military tribunals, the Government carries strict construction too far. It first points out that the statute was originally entitled "An Act To grant relief to persons erroneously convicted in the courts of the United States," Act of May 24, 1938, 52 Stat. 438, and then argues that military tribunals are not federal courts or courts of the United States. It is undoubtedly true that courts-martial are not "federal courts;" they are not among the "inferior courts" which Congress, under Section 1, Article III of the Constitution "may from time to time ordain and establish." Trial of offenses by way of court-martial is an exceptional jurisdiction derived from Article 1, Section VIII, Clause 14 of the Constitution, "To make Rules for the Government and Regulation of the land and naval Forces." Dynes v. Hoover, 1857, 20 How. 65, 61 U.S. 65, 15 L.Ed. 838. See United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8; Winthrop, Military Law and Precedents (2d Ed.1896). "Congress has the power, to provide for the trial and punishment of military and naval offenses" and this power "is given

---

4. Snow v. United States, No. 12526, W.D. Mo., Nov. 9, 1959.

5. Osborn v. Taylor, No. 2945 H.C., D.Kan., Mar. 24, 1960.

*without* any connection between it and the 3d Article of the Constitution defining the judicial power of the United States." Dynes v. Hoover, 20 How. at 78, 61 U.S. at 78, 15 L.Ed. 838. What is important here, however, is that the Unjust Conviction Statute, on which the plaintiff's claim is based, provides, "The Court of Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of *an offense against the United States* and imprisoned." 28 U.S.C.A. § 1495. Thus by the strict, literal terms of the statute the only requirement, on this score, is that the imprisonment be for an offense against the United States. A heading employed in the original form of the statute cannot change the clear meaning of the statutory language. Here, Osborn was accused of a violation of an Article of War, convicted, and imprisoned. The Articles were enacted by Congress and the violation of one of them, as an Act of Congress, constitutes an offense against the United States. See Grafton v. United States, 1907, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084. Since there is no provision in the statute as to any specified court or courts in which the conviction must be obtained to meet the conditions of the statute, the plaintiff has satisfied this prerequisite to recovery by showing he was convicted of a violation of the 92d Article of War.

The Government contends that to allow a member of the Armed Forces to maintain a suit for damages for unjust conviction would "clearly have adverse consequences in terms of military discipline." The adverse consequences are not so clear to us as they are to the Government. On the contrary, a good case may be made for the beneficial effect on military morale if the law is construed as not operating to the disadvantage of men in uniform. The evil at which the statute is aimed is unjust conviction for

an offense against the United States. The stigma of conviction and the physical and mental effects of unjust imprisonment are no less great merely because the unfortunate sufferer happens to wear a military uniform.[6] We agree with Judge Wyche in McLean v. United States, W.D.S.C.1947, 73 F.Supp. 775, 778:

"This Act is a remedial act designed by a fair-minded government as a means of at least partially righting an irreparable wrong done to one of its citizens. It has the beneficent purpose of attempting to compensate, as well as money can compensate for such an injury, the plaintiff for the loss of his liberty through an error on the part of his government. One convicted in a court martial is just as effectively deprived of his liberty as one convicted in the district court of the United States."

Accord, Roberson v. United States, 1954, 124 F.Supp. 857, 129 Ct.Cl. 581, cert. denied, 349 U.S. 954, 75 S.Ct. 883, 99 L.Ed. 1279 (1955).

The armed services today are vastly different from the small standing army and navy of professionals formerly characteristic of the country's military services. In a war we are a nation in arms. Even in time of peace substantially all able-bodied young men are subject to service. Over the years Congress has extended more and more benefits to the service men. Over the years the courts have kept pace with Congress in increasingly recognizing the constitutional rights of service men. The Code of Military Justice and Reid v. Covert, 1957, 354 U.S. 1, 76 S.Ct. 880, 1 L.Ed.2d 1148, are two sides of a single coin. Considering the manifestly broad object of the Unjust Conviction Statute, to rectify governmental injustice, we consider it unthinkable that Congress intended to make the statute inapplicable to service men

---

6. An award of back pay as provided in 10 U.S.C.A. § 875, on which the Government relies to assert that a recovery under the unjust conviction statute is unnecessary, may be totally inadequate to compensate for the harm done. As an example, appellant here claims that he is unable to secure civilian employment because of his imprisonment in Alcatraz.

who have been unjustly convicted. We conclude that an unjust conviction before a military court-martial comes within the scope and operation of the statute before us.

## II.

■■ We now pass to the statutory requirement that the plaintiff "allege and prove that: (1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted." 28 U.S.C.A. § 2513 (a) (1). "Proof of the requisite facts shall be by a certificate of the court or pardon * * *." 28 U.S.C.A. § 2513(b).

The district court found that:

"This record does not show that [Osborn's] conviction has been reversed or set aside, and it does not show that he has been pardoned because of his innocence or the injustness of of his conviction."

The appellant challenges this finding by asserting that he was charged only with a military offense, the violation of the 92d Article of War. He argues that since the order granting his habeas corpus petition incorporated by reference the findings made by the court which granted the release of his co-defendant Snow on the ground that the court-martial which convicted him was without jurisdiction, those findings may be considered as a certificate of the court which discharged him. But see Hadley v. United States, 1946, 66 F.Supp. 140, 141, 106 Ct.Cl. 819, cert. denied, 329 U.S. 815, 67 S.Ct. 635, 91 L.Ed. 695 (1947). This much of the argument is reasonable. The appellant, however, goes on to state the "inescapable conclusion" that he could not be guilty of the offense with which he was charged, since there was no military offense within the jurisdiction of the court-martial charged in the information on which he was tried. This reasoning is fallacious. The "certificate" shows that the court-martial lacked jurisdiction to hear a charge of an Article 92 violation in these circumstances but it does not show that "he is not guilty of

the offense of which he was convicted." A tribunal having proper jurisdiction in this case might or might not find him guilty. In the habeas corpus proceeding there was no consideration of the merits of his conviction and, of course, the "certificate," the habeas corpus order, made no reference to his innocence or guilt. As we read it, the statute clearly contemplates that the authority overturning the conviction be satisfied of the *innocence* of the accused. Rigsbee v. United States, 92 U.S.App.D.C. 244, 204 F.2d 70, 71–72 (1953); United States v. Keegan, 71 F.Supp. 623, 635–636 (S.D.N.Y. 1947). The order of the discharging court, which appellant relies upon as the requisite "certificate," is totally devoid of any indication that the district judge granting the petition considered appellant innocent of the crime of murder.

The legislative history indicates that Congress carefully limited the availability of the Unjust Conviction Statute to those who are truly innocent. Thus, the House Judiciary Committee, in recommending passage of the House Bill, explained that:

"[T]he claimant must be innocent of the particular charge and of any other crime or offense that any of his acts might constitute. The claimant cannot be one whose innocence is based on technical or procedural grounds, such as lack of sufficient evidence, or a faulty indictment— such cases as where the indictment may fail on the original count but claimant may yet be guilty of another or minor offense.[7] "

In United States v. Keegan, S.D.N.Y. 1947, 71 F.Supp. 623, 635, Judge Barksdale concluded that:

"From the above [legislative history of 18 U.S.C. 729, 730, replaced by the code sections here under consideration], it will clearly appear that Congress never intended that every imprisoned person whose conviction has been set aside, should be indemnified by the Government."

---

7. H.R.Rep. No. 2299, 75th Cong., 3d Sess. 2.

The cases dealing with the problem under this section have followed the direction indicated in the Committee report. Thus in Cratty v. United States, S.D. Ohio 1949, 83 F.Supp. 897, a petition for a certificate of innocence was refused where the petitioner's conviction had been reversed on the ground that the statute of limitations had run. The court noted that the Court of Appeals in reversing Cratty's conviction had not found and had not intended to find that he had not committed any crime connected with the count on which he had been convicted. See 83 F.Supp. id. at 899. In United States v. Brunner, 6th Cir., 1952, 200 F. 2d 276, a certificate of innocence was denied a claimant whose conviction had been set aside because it rested on evidence which was privileged. The Sixth Circuit said:

"A reversal for procedural error is not in any sense a finding that the petitioner did not commit the offense charged in the indictment. Moreover, the phrasing of the Act and its legislative history proclaim the care with which its framers guarded against opening wide the door through which the treasury may be assailed by persons erroneously convicted. Innocence of the petitioner must be affirmatively established and neither a dismissal nor a judgment of not guilty on technical grounds is enough. The statute does not aim to compensate every convicted defendant whose conviction is set aside by a reviewing court." 200 F.2d at 280.

In the case before us, the habeas corpus proceeding in which Osborn was ordered released decided only the jurisdictional point that the court-martial did not have the power to pass on the question of whether Osborn had violated the 92d Article of War. This is not a determination that "he is not guilty of the offense of which he was convicted." It is a procedural decision falling within the principles of the Brunner case.

### III.

The alternative conditions of § 2513(a) (2) require that the claimant show either that he did not commit any of the acts or that his acts constituted no offense against the United States or a State. We accept appellant's argument that the "or" in the statute means that he may prove either; he does not have to prove both. See United States v. Keegan, supra, 71 F.Supp. at 638. But see Hadley v. United States, 1946, 66 F.Supp. 140, 141–142, 106 Ct.Cl. 819, cert. denied, 329 U.S. 815, 67 S.Ct. 635 (1947). Logically, it would not be justifiable to require a claimant to prove both. If he did not commit the act charged it would be immaterial whether the act was unlawful, and conversely, if the act was not criminal it should make no difference whether he had done it. In this case, however, the "certificate of the court"[8] fails to show either.

To show that he did not commit the acts charged, appellant asserts that he was charged solely with an offense in violation of military law, that by the terms of the Sixth Amendment and the 92d Article of War he could not violate the military law in time of peace within the geographical limits of the United States, and that, therefore, he did not commit the act of violating the 92d Article of War. In effect, the appellant argue that since the court-martial had no jurisdiction he did not commit the acts charged. His error lies in equating a jurisdictional limitation with a substantive limitation on the crime itself and in treating the alleged criminal acts as indistinguishable from the statutory provisions under which he was charged. First, a claimant under the statute may not rely upon the manner in which he

---

8. The provisions of the statute that proof of the requisite facts shall be by a certificate of the court, 28 U.S.C.A. § 2513(b), is mandatory, Hadley v. United States, supra 66 F.Supp. at 142, and the facts in the certificate are conclusive on the issue of the claimant's innocence, Andolschek v. United States, 111 Ct.Cl. 567, 77 F.Supp. 950 (1948).

was tried to show that he actually committed no substantive offense. The constitutional and statutory limitations upon the procedure for trying the offense do not affect the issue of his guilt or innocence; they deal only with the way in which guilt or innocence may be proven. Second, the charge was that Osborn and three others did "with malice aforethought, willfully, deliberately, feloniously, unlawfully, and with premeditation, kill * * * Dewey Osborne, a human. * * *" To satisfy the first alternative under § 2513(a) (2), Osborn was required to show that he did not engage in the malicious and premeditated killing of Osborne. For example, in United States v. Keegan, S.D.N.Y.1947, 71· F. Supp. 623, the petitioner seeking a certificate of innocence had been convicted of conspiracy to counsel draft evasion and his conviction had been reversed by the Supreme Court for insufficient evidence. The district court denied his petition because there was sufficient evidence to show that · he had committed the acts charged and, though not sufficient to show the existence of a conspiracy, the evidence did show that petitioner had committed the substantive offense of counseling draft evasion. Accord, Weiss v. United States, S.D.N.Y.1951, 95 F. Supp. 176. Similarly, in Hadley v. United States, 1946, 66 F.Supp. 140, 106 Ct. Cl. 819, cert. denied (1947), 329 U.S. 815, 67 S.Ct. 635, 91 L.Ed. 695, it was found that an habeas corpus order reciting that no offense against the United States had been charged was insufficient to show that petitioner had not committed the acts or that the acts did not constitute a crime. In the case before us, there is absolutely no evidence that appellant did not kill his fellow prisoner in concert with others as charged. He has therefore failed to satisfy the first alternative condition for recovery.

The second alternative condition is that the acts in connection with the charge constituted no offense. Clearly, the willful and premeditated killing of another human being constitutes murder. To avoid this obvious conclusion, Osborn argues that

"[I]t would be impossible to reason logically that the acts of omissions in connection with a charge of no offense could constitute a violation of the criminal statutes of the United States or of any state; an offense cannot be implied from a charge of no offense."

The statement of this argument carries its own refutation. The acts must be those which are in connection with the charge; there is no requirement that the charge itself state a cognizable offense so long as the acts themselves constitute a crime. As Judge Barksdale pointed out in his exhaustive analysis of the Unjust Conviction Statute, the statutory phrase "in connection with such charge" was meant to preclude the proof of some contemporaneous, but unrelated crime to bar recovery. See United States v. Keegan, supra 71 F.Supp. at 638. That it was not meant to require that the acts be charged in conjunction with an actual offense is shown by Sinclair v. United States, 109 F.Supp. 529, 124 Ct. Cl. 182, cert. denied, 345 U.S. 974, 73 S.Ct. 1123, 97 L.Ed. 1390, (1953). There the Court of Claims found that the Supreme Court had reversed the claimant's conviction, making the necessary inference that his acts constituted no offense against the United States. But the court refused recovery because there was no indication in the opinion that the claimant did not commit any of the acts charged or that the acts did not constitute a crime against the state within which they were alleged to have occurred. See also Hadley v. United States, supra. The acts Osborn was charged with committing are sufficient to specify the crime of murder, and it would be immaterial if he had been charged with no offense.

Osborn has thus failed to satisfy either of the two principal alternatives prerequisite to recovery. He has not shown by a "certificate of the court" that he did not commit the act of killing a fellow prisoner, nor has it been shown that

that act is not an offense against the United States or the State of Kansas.

Finally, we note that Osborn has not shown that "he did not by misconduct or neglect cause or bring about his own prosecution." He relies upon the bare assertion that he could not bring about his own prosecution through misconduct or neglect where he has not been charged with an offense. This, however, is just what the statute requires. Congress excluded from the operation of the remedial provisions of the statute those who, though innocent, had negligently or willfully failed to take the necessary measures to avoid conviction.

We hold that the appellant has not satisfied the mandatory conditions for recovery under the statute. The judgment of the court below is

Affirmed.