**Hans Werner TIBKE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 497, Docket 28374.**

United States Court of Appeals
Second Circuit.

Argued June 3, 1964.

Decided July 9, 1964.

Elmer Fried, of Fried & Mailman, New York City (Stanley Mailman, New York City, on the brief), for petitioner.

Roy Babitt, Sp. Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., on the brief), for respondent.

Before MOORE, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Section 245 of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1255 (Supp. V, 1959–63) (the "Act") provides:

"(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

The issue in the present case is whether, as the petitioner urges, Section 245 permits the Attorney General to adjust the status of an alien who entered as an immigrant and who later became deportable or whether, as the Service maintains, the Section permits adjustment of status only in the case of nonimmigrants.

Petitioner Tibke is a native and citizen of Germany who entered the United States in 1958 as an immigrant admitted for lawful permanent residence. While

**44**

resident in the United States Tibke was twice convicted of crimes involving moral turpitude. By reason of these convictions Tibke was deportable under Section 241(a) (4) of the Act.

During the pendency of deportation proceedings against him, Tibke married an American citizen. Although his prior convictions rendered him inadmissible to the United States "for permanent residence" within the meaning of Section 245, Section 212(g) of the Act authorizes the Attorney General, in his discretion, to waive this ground of excludability for an alien who is the spouse of a United States citizen, if it is established that exclusion would result in extreme hardship to the spouse and that admission of the alien would not be contrary to the national welfare and security of the United States. As a result of his marriage, therefore, Tibke became eligible for relief under Section 212(g), which, if granted, would satisfy the admissibility requirements of Section 245. By his marriage Tibke also acquired a nonquota status. To use the language of Section 245, if that Section is applicable to him, he became "eligible to receive an immigrant visa" immediately upon approval of his application for adjustment of status.

Tibke applied in the pending deportation proceeding for a waiver of excludability under Section 212(g) and an adjustment under Section 245 to the status of an alien lawfully admitted for permanent residence. The Special Inquiry Officer denied Tibke's application, relying on Matter of Da Silva, Interim Dec. No. 1268 (1963), a decision of the Board of Immigration Appeals, which held that Section 245 afforded relief only to nonimmigrants and not to immigrants. On Tibke's appeal to the Board of Immigration Appeals, that Board upheld the ruling of the Special Inquiry Officer. Tibke

thereupon appealed to this court. Immigration and Nationality Act, § 106, 8 U.S.C. § 1105a (Supp. V, 1959–63); Foti v. I. N. S., 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

■ On its face the statute seems clear. "An alien" includes both a nonimmigrant and an immigrant.[1] Nevertheless the Board of Immigration Appeals in Matter of Da Silva, supra, held that the statutory development of Section 245 and the relationship of Section 245 to other portions of the statutory framework indicated that Congress did not intend "a change so radical as to make Section 245 apply to aliens lawfully admitted as immigrants as well as nonimmigrants." Substantially the same analysis is urged here by respondent.

We are not persuaded by the material referred to by respondent and the Board of Immigration Appeals that Congress meant anything other than what it said, and we hold that Section 245 applies to all aliens, with the expressly stated exception of alien crewmen.

■ Section 245 was first enacted in 1952 to supplant the administrative procedure known as "pre-examination." Pre-examination relieved certain aliens, whose status would otherwise not entitle them to remain in the United States, from the hardship and expenses of going abroad for a long wait until an immigration visa was processed. Aliens qualifying for pre-examination "had their eligibility to enter as immigrants determined in this country prior to sending them to Canada where they briefly appeared before a United States consular officer, and then returned to this country with an immigrant visa." Sen.Rep.No.2133, 85th Cong., 2d Sess., 1958, 2 U.S.Code Cong. & Adm.News, p. 3698. Section 245 eliminates the perfunctory and needless trip to Canada by permitting eligible aliens to adjust their status while remaining in

1. The definitions section of the Immigration and Nationality Act, 8 U.S.C. § 1101 (a) (3) (1958) provides:
 "The term 'alien' means any person not a citizen or national of the United States."

See United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491, 494 (S.D.N.Y. 1960); Petition of Kutay, 121 F.Supp. 537, 540 (S.D.Cal.1954).

the United States throughout the administrative process. The rights conferred by Section 245 are thus wholly procedural; the alien must still satisfy applicable substantive standards and persuade the Attorney General to exercise his discretion favorably.

In the basic 1952 Act, Section 245 provided that the applicant must be "an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status." 66 Stat. 217 (1952). In 1958 the provision was amended to permit as an applicant "an alien who was admitted to the United States as a bona fide nonimmigrant," 72 Stat. 699 (1958), thus deleting the requirement of continuance of the original bona fide nonimmigrant status. The present provision, which extends coverage to "an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States," was adopted in 1960.

The Board of Immigration Appeals concluded that this statutory history evidenced a concern with the plight of nonimmigrants and that the purpose of the 1960 amendment was to eliminate the necessity for the applicant's original status as a nonimmigrant to have been bona fide—a requirement that has caused some administrative difficulty, see Matter of B——, 8 I. & N. Dec. 621 (1960); Matter of G——, 8 I. & N. Dec. 636 (1960); Matter of A——, 8 I. & N. Dec. 655 (1960); Matter of F——, 8 I. & N. Dec. 680 (1960)—rather than to expand coverage to all aliens. Support for this interpretation was found in the heading under which Section 245 continues to be found in the codified statutes, 8 U.S.C. § 1255 (Supp. V, 1959–63), "Adjustment of status of *nonimmigrant* to that of person admitted for permanent residence." (Emphasis added.)

We think that, on the contrary, the statutory history demonstrates that when Congress intended to limit Section 245 to nonimmigrants it did so without ambiguity and that the change in the statute by the use of the general term "an alien" must be given full effect. Had Congress meant to make only the limited change suggested by respondent, it would have been sufficient merely to eliminate the words "bona fide" from the phrase "bona fide nonimmigrant." Instead the inclusive term "an alien" was left unmodified in the statute. In view of the repeated attention given Section 245 by Congress, we can only conclude that it was fully aware of the significance of the language it selected.

 Section headings cannot control the meaning of an enactment that is otherwise clear. United States v. Minker, 350 U.S. 179, 185, 76 S.Ct. 281, 100 L.Ed. 185 (1956); Lapina v. Williams, 232 U.S. 78, 92, 34 S.Ct. 196, 58 L.Ed. 515 (1914) (use of word "immigration" in title of act cannot limit to alien immigrants application of provision respecting "aliens"). The consideration to be given a section heading is particularly slight when, as here, it is included in a codification that has not been enacted as positive law and does not appear in the amending statute, 74 Stat. 505 (1960). See Osborn v. United States, 322 F.2d 835, 839 (5th Cir. 1963).

We have not been cited to anything in the legislative history of the 1960 amendment which would support the position of respondent. If anything, the legislative history compels a contrary conclusion. The Senate Report states:

"Section 10 of the joint resolution, as amended, would amend section 245(a) of the Immigration and Nationality Act which authorizes the Attorney General under certain circumstances to adjust the status of an alien who was admitted into the United States as a *bona fide nonimmigrant* to that of an alien lawfully admitted for permanent residence. Under the proposed amendment to section 245(a) the procedure for the adjustment of the immigration status of aliens to that of aliens lawfully admitted for permanent residence would be broadened so as to include *all aliens* (other than alien crewmen) who have been inspected

and admitted or who have been paroled into the United States, thereby providing considerably more flexibility in the administration of the law." (Emphasis added.) Sen.Rep.No.1651, 86th Cong., 2d Sess., 1960, 2 U.S.Code Cong. & Adm. News, pp. 3146–3147. A substantially identical statement was contained in a letter from Lawrence E. Walsh, Deputy Attorney General, reprinted in id. at page 3142.

The point most vigorously pressed by respondent is the contention that an interpretation that would extend relief under Section 245 to immigrants as well as nonimmigrants would disrupt the statutory scheme by "mak[ing] a dead letter, in most cases, of the suspension of deportation statute," Section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254 (Supp. V, 1959–63), which affords a remedy similar to that obtainable under Section 245.[2]

In many respects the requirements imposed by Section 244 are more stringent than those prescribed by Section 245. For example, an alien in Tibke's situation seeking relief under Section 244 would have to show that he had been physically present in the United States and had been a person of good moral character for a continuous period of not less than ten years immediately following the commission of the crimes constituting the ground of deportation and that deportation would "result in exceptional and extremely unusual hardship to [himself] or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Even so, the alien would ultimately still be deported if Congress, upon receiving a report of the Attorney General's decision, did not pass a concurrent resolution favoring suspension of deportation. Tibke cannot satisfy the requirement of ten years continuous residence and thus is not eligible for relief under Section 244.

■ Respondent argues that it would be anomalous to permit immigrants to apply under Section 245 and thereby to sidestep the restrictions so carefully embodied in Section 244. Since Tibke's case is specifically covered by Section 244, the argument continues, that provision should prevail over Section 245 under the principle that "[g]eneral language of a statutory revision, although broad enough to include it, will not be

---

2. Section 244, 8 U.S.C. § 1254 (Supp. V, 1959–63), provides, in pertinent part:

"(a) Adjustment of status for permanent residence; contents.

"As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

* * * * * *

"(2) is deportable under paragraphs (4), (5), (6), (7), (11), (12), (14), (15), (16), (17), or (18) of section 1251 (a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

* * * * *

(3) In the case of an alien specified in paragraph (2) of subsection (a) of this section—

if during the session of the Congress at which a case is reported, or prior to the close of the session of the Congress next following the session at which a case is reported, the Congress passes a concurrent resolution stating in substance that it favors the suspension of such deportation, the Attorney General shall cancel deportation proceedings. If within the time above specified the Congress does not pass such a concurrent resolution, or if either the Senate or the House of Representatives passes a resolution stating in substance that it does not favor the suspension of the deportation of such alien, the Attorney General shall thereupon deport such alien in the manner provided by law."

held to apply to a matter specifically dealt with in another part of the same enactment." D. Ginsburg & Sons v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932).

The difficulty with respondent's argument is that it proves too much. Section 244, which, like Section 245, identifies an eligible applicant as "an alien," provides a remedy for nonimmigrants as well as immigrants. Fong v. I. N. S., 308 F.2d 191 (9th Cir. 1962). Yet under present administrative practice a nonimmigrant deportable for the same reason as Tibke—conviction of two crimes involving moral turpitude—is eligible to seek relief under Section 245. Matter of M——, 8 I. & N. Dec. 285 (1959); 8 C.F.R. § 245.1 (1964 Supp.). If the construction adopted by this court would create an anomaly in the future with regard to immigrants, such an anomaly presently exists as to nonimmigrants.

Moreover it is by no means self-evident that it would be anomalous for aliens to be eligible for relief under both sections. While Section 244 is in some respects more restrictive than Section 245, in others it is more liberal. For example, eligibility for suspension of deportation under Section 244 can be established by a showing of exceptional and extremely unusual hardship to the alien himself; Section 245 relief is available to an alien deportable on grounds of criminality only if deportation would cause extreme hardship to the alien's lawfully resident or citizen spouse, parent, or child. Section 244 does not require, as does Section 245, that "[an] immigrant visa [be] immediately available to [the alien] at the time his application is approved." Thus Section 244 may permit an alien present in the United States, perhaps through an illegal entry, to obtain a preference over his countrymen who have patiently awaited the granting of a visa from an oversubscribed quota. That Congress was concerned with this possibility and retained a veto power under Section 244, see H.R.Rep.No.1365, 1952, 2 U.S.Code

Cong. & Adm. News, p. 1718, does not mean it would be anomalous to interpret Section 245 so that the two provisions overlap to some extent.

In enacting the 1960 amendment to Section 245, Congress had the objective of "providing considerably more flexibility in the administration of the law." Sen.Rep.No.1651, 1960, 2 U.S. Code Cong. & Adm. News, p. 3147. Such a remedial provision should not be construed strictly. Cf. Costello v. I. N. S., 376 U.S. 120, 128, 84 S.Ct. 580, 11 L.Ed. 2d 559 (1964). Whether we read Section 245 separately or together with Section 244, on its face or in the context of the legislative and statutory history, we are impelled to the conclusion that Section 245 affords relief to immigrants as well as nonimmigrants. Accordingly, the judgment of the Board of Immigration Appeals must be reversed and the cause remanded to the Special Inquiry Officer for the exercise of discretion.

Reversed and remanded.