# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3287

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of North Dakota. |
| Racing Services, Inc.; Susan Bala, | * |
| | * |
| Defendants - Appellants. | * |

_____

Submitted: June 11, 2009
Filed: September 4, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

LOKEN, Chief Judge.

In <u>United States v. Bala</u>, 489 F.3d 334 (8th Cir. 2007), we reversed federal gambling and money laundering convictions arising out of a parimutuel account wagering operation in Fargo, North Dakota. The criminal defendants, Racing Services, Inc. (RSI), and its president and sole shareholder, Susan Bala, petitioned the district court for a certificate of innocence, the statutory prerequisite to an action against the government in the Court of Claims seeking damages for wrongful imprisonment. 28 U.S.C. §§ 1495, 2513. The district court[1] denied the petition on

_____

[1]The HONORABLE RALPH R. ERICKSON, United States District Judge for the District of North Dakota

two grounds. RSI and Bala appeal. Reviewing the denial of a certificate of innocence for abuse of discretion, we affirm, agreeing with the court that RSI and Bala were not truly innocent of state criminal gaming law violations. See Betts v. United States, 10 F.3d 1278, 1283 (7th Cir. 1993) (standard of review).

To recover damages for wrongful imprisonment under 28 U.S.C. § 1495, Bala must obtain a certificate of innocence from the district court in which she was convicted. See 28 U.S.C. § 2513(b). As relevant here, to obtain the certificate, Bala must allege and prove that her conviction (1) "has been reversed or set aside on the ground that [s]he is not guilty of the offense of which [s]he was convicted . . . and (2) . . . [her] acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State . . . and [s]he did not by misconduct or neglect cause or bring about [her] own prosecution." 28 U.S.C. § 2513(a). This statute, first enacted in 1938, compensates only the truly innocent, making it "necessary to separate from the group of persons whose convictions have been reversed, those few who are in fact innocent of any offense whatever." Betts, 10 F.3d at 1284, quoting S. Rep. No. 75-202 (1937). A reversal of the criminal conviction based on insufficiency of the prosecution's evidence does not entitle the defendant to a certificate of innocence. See Osborn v. United States, 322 F.2d 835, 840 (5th Cir. 1963).

Under North Dakota law, only charities and other "public-spirited organizations" may be licensed as off-track betting operators ("OTBs") to conduct parimutuel wagering on simultaneously broadcasted horse races. See N.D. Cent. Code § 53-06.2-06.[2] RSI was the sole entity licensed to provide simulcast services to the

---

[2]Citations to the North Dakota Century Code are to the provisions in effect at the time of Bala's and RSI's alleged offenses, October 2002 to April 2003.

OTBs.[3]  RSI as simulcast service provider was required to pay specified percentages of the parimutuel pools to the Racing Commission and the state treasurer.  N.D. Cent. Code § 53-06.2-11.1 and .2.  After paying these fees and "qualifying expenses," the remainder of the amount withheld from the pool must be used "for eligible uses allowed to charitable gambling organizations."  § 53-06.2-11.5.  Any violation of these statutes was a class A misdemeanor.  § 53-06.1-16.1.

In 2001, the Legislature amended this regime to permit parimutuel "account wagering," wagers that are paid electronically from player accounts rather than in person.  The statute provided that account wagers "may only be made through the licensed simulcast service provider," RSI.  § 53-06.2-10.1.  After enactment, RSI equipped an account wagering call center at 1318 23rd Avenue South in Fargo ("the 1318 site").  Between October 1, 2002, and April 28, 2003, RSI processed over $99 million of account wagers at the 1318 site.  RSI and Bala distributed none of the wagering proceeds to the Racing Commission, to the state treasurer, or to any charity licensed to conduct OTB operations.  The account wagers were not reported, and RSI used a bookkeeping system that disguised the gambling activities at the 1318 site.

The North Dakota Racing Commission learned of the undisclosed operation and shut it down.  An FBI investigation and federal criminal prosecution followed.  The jury convicted RSI and Bala of conducting an illegal gambling business in violation of 18 U.S.C. § 1955; illegal transmission of wagering information in violation of 18 U.S.C. § 1084(a); and eight counts of money laundering and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h).  The district court sentenced Bala to twenty seven months in prison.  She had served seventeen months in prison when we reversed the convictions because of insufficient

_____

[3]RSI's simulcast services included providing satellite broadcasts of live races, establishing and maintaining combined parimutuel pools of North Dakota wagers, and many record-keeping functions.  For additional background facts, see Bala, 489 F.3d at 336-37.

evidence to support the federal charges.  <u>Bala</u>, 489 F.3d at 336.  Bala was immediately released from custody.  This application for a certificate of innocence followed.

After reviewing the entire case file, including the trial transcript and our decision in <u>Bala</u>, the district court concluded that Bala and RSI likely violated "numerous sections of the North Dakota Century Code."  Applying 28 U.S.C. § 2513(a)(2), the court denied a certificate of innocence because petitioners failed to prove that "no offense" was committed, and also because Bala's negligence "contributed to her prosecution."  On appeal, RSI and Bala challenge this ruling, arguing (i) it is contrary to our decision in <u>Bala</u> that the failure to obtain a license for the 1318 site and the failure to disburse proceeds to charity OTBs did not violate state law, and (ii) the court erred in concluding that the actions of Bala or RSI caused the baseless prosecution.  We need consider only the first issue.

The decision to deny a certificate of innocence is committed to the sound discretion of the district court.  <u>Betts</u>, 10 F.3d at 1283.  Here, the decision was based on the court's belief that the conduct at issue in the federal prosecution involved the violation of one or more state criminal laws.  Unlike a criminal case, the court's belief need not be based upon proof beyond a reasonable doubt.  Rather, Bala and RSI must persuade the district judge who presided over their criminal prosecution that they were truly innocent of *all crimes* to qualify for civil damage relief.  <u>See</u> <u>United States v. Brunner</u>, 200 F.2d 276, 280 (6th Cir. 1952) ("Innocence of the petitioner must be affirmatively established").

When a certificate is denied because the federal court concludes that the conduct in question violated state law, our review for abuse of discretion is especially deferential.  As the D.C. Circuit explained in <u>Rigsbee v. United States</u>, 204 F.2d 70, 72 (D.C. Cir. 1953):

Where, as here, [the trial judge] has exercised that discretion, we cannot require him to stultify himself by certifying an opinion contrary to his real conviction -- no matter what our own view might be -- except, perhaps, in a case in which the refusal to certify innocence was completely capricious and without rational basis.

The point is well-illustrated by the oft-cited opinion in United States v. Keegan, 71 F. Supp. 623, 639 (S.D.N.Y. 1947), where the trial judge explained:

[I]f the above quoted dictum of the [United States] Supreme Court is binding upon me as an adjudication that the testimony was insufficient to prove defendant guilty of [another offense], the testimony is certainly sufficient to create so strong a belief in my mind that petitioner was guilty of [that offense], that I would not feel justified in certifying that he was not guilty of this crime.

Here, in the federal prosecution, proof of a violation of state law was an element of the primary charge, that RSI and Bala violated 18 U.S.C. § 1955 by conducting an "illegal gambling business." In reversing, we held that the government failed to prove a state law violation that turned lawful parimutuel account wagering into an illegal gambling business. 489 F.3d at 340-41. But we noted that "the government could have avoided this evidentiary insufficiency by proving that RSI entered the account wagering business *never* intending to distribute its net proceeds to charity." Id. at 341. We expressed doubt that the government proved any state law violation during the seven months in question because the Racing Commission had inexplicably failed to promulgate clarifying regulations. Id. at 339-40. But this was an issue we did not need to decide, like the Supreme Court dictum referred to in Keegan. In no way was our decision premised on Bala's or RSI's actual innocence of either state or federal charges. Our decision was based on the insufficiency of the evidence to support the federal charges.

RSI and Bala secretly collected and distributed $99,000,000 of parimutuel account wagers without paying one penny to charities, to the Racing Commission, or to the state treasurer, as North Dakota's gambling laws required. Focusing on the overall conduct in question, the trial judge with the greatest knowledge of the case, on whom Congress conferred the certification authority, concluded that RSI and Bala are not truly innocent of all state law offenses and denied a certificate of innocence. Under the deferential standard of review applicable to this issue, we may not overturn that decision as an abuse of discretion. Indeed, we agree with the court's assessment. Given this conclusion, we need not address the court's alternate ground for denying a certificate, that Bala's "negligence contributed to her prosecution such that a certificate of innocence is unwarranted" under 28 U.S.C. § 2513(a)(2).

The district court's Order dated September 19, 2008, is affirmed. RSI's motion to supplement the record on appeal is denied.

_____