RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0263p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-6594

ERNEST WAYNE GRUBBS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:02-cr-00084-2—Danny C. Reeves, District Judge.

Decided and Filed: October 24, 2014

Before: SILER, CLAY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Michael A. Partlow, Kent, Ohio, for Appellant. Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, Vijay Shanker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant Ernest Wayne Grubbs appeals from the district court's order denying his motion pursuant to 28 U.S.C. § 2513 for a certificate of innocence on the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, we **AFFIRM** the district court's order.

**BACKGROUND**

Grubbs' petition for a certificate of innocence relates to his 2003 conviction for possession of a certain nine-millimeter handgun, overturned by this court for lack of sufficient evidence in *United States v. Grubbs*, 506 F.3d 434 (6th Cir. 2007) ("*Grubbs I*"). In October 2001, Kentucky State Police officers executed a search warrant at the home of Defendant's mother[1] in Four Mile, Kentucky. *Id.* at 436. The search warrant was related to an investigation into stolen automobiles and allegations that Defendant and his brother Paul were operating a "chop shop." *Id.* At the time of the search, Defendant was living in South Carolina but made periodic visits to Kentucky to stay at his mother's house. *Id.* at 436. Paul was living at their mother's house full time. *Id.* The officers recovered the handgun after Paul told them to look under his bedding. *Id.* at 437.

Defendant pleaded guilty to three counts related to the stolen vehicle allegations and went to trial on two firearms charges and one count of possessing ammunition as a felon. *Id.* At the close of the evidence, the district court granted Defendant's motion for a judgment of acquittal on a charge for another firearm, a rifle that was discovered in another bedroom of his mother's house. *Id.* at 438. The jury acquitted Defendant of the ammunition charge and convicted him only of possessing the nine-millimeter handgun. *Id.* In *Grubbs I*, this Court summarized the evidence tying Defendant to the nine-millimeter handgun as follows:

> One of the firearms recovered by the police during the search was a Beretta nine-millimeter handgun ("nine-millimeter" or "handgun"). Paul disclosed the presence of the handgun to the officers and told them it was located "up under [his] pillow."[] At trial, Paul testified that he owned the nine-millimeter and that he had purchased it at a flea market in London, Kentucky approximately one month before the search. The Government did not introduce any evidence contradicting Paul's testimony that the handgun was his or that it was discovered under the pillow on which he regularly slept. (*See* JA 82 (Detective Riley testified that "I know that Mae Grubbs, their mother, told me that Paul slept on the bed that had the 9mm under the mattress....").) The Government also did not introduce any

---

[1]Courts examining 28 U.S.C. § 2513 have agreed that requests for a certificate of innocence are in essence civil proceedings, where the individual seeking the certificate is in the position of the plaintiff. *See, e.g., Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993). In line with the naming conventions adopted in those cases, it would seem more appropriate to call Ernest Wayne Grubbs "Petitioner" rather than "Defendant;" however, in order to avoid confusion, we refer to Grubbs as "Defendant," consistent with the usage adopted by the parties in the instant appeal.

evidence contradicting Mae's testimony that Grubbs "slept on the couch" in a different room than where the handgun was found. Moreover, although Grubbs's fingerprints were found on a rifle magazine, the Government did not introduce any evidence that Grubbs's fingerprints were found on the nine-millimeter supporting the felon-in-possession conviction.

The Government concedes that the sole evidence tying Grubbs to the nine-millimeter for purposes of establishing a violation of the felon-in-possession statute was the testimony of Edward Jones. Jones, who lived three houses away from Mae's residence, recounted an altercation with Grubbs "at least a month or two" before the police interviewed him in connection with their investigation of Paul and Grubbs, where Grubbs threatened him with a handgun. Jones testified that as he was driving home one night, Grubbs flagged him down and approached the driver's side of his car. According to Jones, Grubbs "was just cussing, talking about his sister and me and my uncle was supposed to be seeing her and all that stuff, breaking her heart." Although the record is not entirely clear, it appears that the dispute between Grubbs and Jones had to do with an alleged affair that Jones, a married man, was carrying on with Grubbs's sister. Jones testified that Grubbs had a "dark-colored," "automatic" pistol in his right hand, and that Grubbs threatened to shoot Jones. When Jones noticed his wife drive up behind him, he pulled out and continued driving home. Jones's wife Reva also testified to seeing Grubbs with a gun the night of the altercation. However, Reva could not describe the gun because all she saw "was the top of the barrel." At trial, she was never asked whether the recovered firearm was the same one she saw Grubbs carrying. Jones apparently never left his car, shots were never fired, and the whole episode lasted "[j]ust a matter of minutes."

At trial, Jones was presented with the nine-millimeter handgun recovered from the Grubbs residence. When asked to compare the gun at trial with the gun he observed in Grubbs's hands the night of their altercation, Jones testified that the gun at trial "[l]ooked like it." Jones said that he had "seen guns all [his] life" but he admitted that he could not be certain that the handgun he inspected while on the witness stand was the same handgun Grubbs had carried one or two months earlier: "As far as [I] know laying another one down just like that, no, I can't say this one, that one, which one. I know it was a gun. I know it was automatic." Further, Jones was asked, "Can't even say with 100% certainty that was the actual gun and not, a replica, can you?" Jones responded, "It could have been. It was a gun. I don't know whether it was a real gun, toy gun, or what. It was a gun."

506 F.3d at 437-38 (record citations omitted).

We held that this evidence was insufficient to prove beyond a reasonable doubt that Defendant possessed the nine-millimeter gun. While the jury could choose not to credit testimony that Paul owned the nine millimeter, the government "still [had] the burden to come forward with evidence connecting [Defendant] with the firearm." *Id.* at 440. We concluded that

Edward Jones' testimony about his altercation with Defendant did not provide "the substantial evidence we need to uphold a conviction for constructive possession." *Id.* at 441. Jones was only able to describe the gun as "dark-colored" and "automatic." *Id.* As this Court concluded, "these attributes are too common to support a conviction for constructive possession." *Id*. at 441. Additionally, this Court found insufficient temporal proximity between the altercation with Jones and the discovery of the handgun during the search, calculating that, if viewed in the light most favorable to the government, Jones' testimony allows an inference that Defendant had threatened him with a gun ten days prior to the search—though the incident may have occurred as much as a month earlier. *Id.* at 442-43. We observed that ten days was "far more time" than had elapsed in *United States v. Arnold*, 486 F. 3d 177 (6th Cir. 2007), a case where the evidence was held sufficient to support a conviction based in part on testimony that the defendant threatened the victim with a gun minutes before officers found the weapon in close proximity to the defendant. *Grubbs I*, 506 F.3d at 442. Thus, while "[a]t best" Edward Jones' testimony could support a conclusion "that Grubbs possessed a black, semiautomatic firearm at some point before the arrest," his testimony was insufficient to establish beyond a reasonable doubt that Defendant possessed the particular firearm found in the search and charged in the indictment. *Id.* at 441.

The case was remanded for entry of a judgment of acquittal on the firearm count as well as resentencing on the stolen vehicle charges under *United States v. Booker*, 543 U.S. 220 (2005). *Id.* at 444. In January 2008, Defendant was resentenced on the stolen auto charges and released. (R. 124, Amended Judgment, J.A. at 310-15.)

The present appeal arises from Defendant's October 17, 2013, motion for a certificate of innocence on the handgun charge pursuant to 28 U.S.C. § 2513. The district court denied the motion on the grounds that the preponderance of the evidence introduced at trial established that Defendant did commit the crime of possessing the nine-millimeter gun as a felon. This appeal followed.

**DISCUSSION**

A person wrongly convicted of a federal crime may seek compensation in the Court of Federal Claims for the years that person spent wrongly incarcerated, provided that the person first obtains a certificate of innocence. 28 U.S.C. §§ 1495 and 2513 (2012). The statute is "a

remedial act designed by a fair-minded government as a means of at least partially righting an irreparable wrong done to one of its citizens." *Osborn v. United States*, 322 F.2d 835, 839 (5th Cir. 1963) (quoting *McLean v. United States*, 73 F. Supp. 775, 778 (W.D.S.C. 1947)). This Court has not had occasion to interpret the provisions governing entitlement to a certificate of innocence since 1952. *See United States v. Brunner*, 200 F.2d 276 (6th Cir. 1952) (applying the predecessor statute, 18 U.S.C. §§ 729, 730). Similarly, our sister circuits have decided only a handful of cases concerning a petitioner's right to a certificate of innocence since the procedure was first instituted in 1938.[2]

Applying the plain language of the statute and guidance from the admittedly scant case law to the present case, we conclude that the district court did not abuse its discretion in denying Grubbs a certificate of innocence. Although the evidence tying Defendant to the nine-millimeter handgun fell short of supporting a criminal conviction, in a civil action such as this the district court could credit Jones' testimony as evidence that Defendant did possess the handgun subsequently recovered from his mother's house.

### A. Standard of Review

Appellate courts review a district court's decision to grant or deny a certificate of innocence for abuse of discretion. *United States v. Graham*, 608 F.3d 164, 172 (4th Cir. 2010); *Diamen v. U.S.*, 604 F.3d 653, 655-56 (D.C. Cir. 2010); *United States v. Racing Servs., Inc.*, 580 F.3d 710, 713 (8th Cir. 2009); *Betts v. United States*, 10 F.3d 1278, 1283 (7th Cir. 1993). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Geier v. Sundquist*, 372 F.3d 784, 789-90 (6th Cir. 2004) (internal quotation omitted); *see also Graham*, 608 F.3d at 178 (4th Cir. 2010) (Gregory, J., dissenting) ("[T]he district court's failure to correctly apply [28 U.S.C. § 2513] is an error of law, which is necessarily an abuse of discretion.").

---

[2]*Pulungan v. United States*, 722 F.3d 983 (7th Cir. 2013); *Diamen v. United States*, 604 F.3d 653 (D.C. Cir. 2010); *United States v. Graham*, 608 F.3d 164 (4th Cir. 2010); *Crooker v. Warden, FCI Loretto*, 386 F. App'x 154 (3d Cir. 2010); *United States v. Racing Servs., Inc.*, 580 F.3d 710 (8th Cir. 2009); *Finley v. United States*, 328 F. App'x 480 (9th Cir. 2009) (per curiam); *Betts v. United States*, 10 F.3d 1278 (7th Cir. 1993); *Osborn v. United States*, 322 F.2d 835 (5th Cir. 1963); *Rigsbee v. United States*, 204 F.2d 70 (D.C. Cir. 1953).

Under an abuse of discretion review, conclusions of law are reviewed *de novo*. *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2013). *See also Diamen*, 604 F.3d at 655-56 (reviewing *de novo* a legal question in interpreting 28 U.S.C. § 2513). A factual finding, on the other hand, "will be deemed clearly erroneous only where it is against the clear weight of the evidence or when upon review of the evidence, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Smoot v. United Transp. Union*, 246 F.3d 633, 641 (6th Cir. 2001). Additionally, when the district court's factual findings rest upon credibility determinations, "this Court affords great deference to the findings[.]" *Id.* (citation omitted).

## B. Analysis

### 1. Standard for Issuing a Certificate of Innocence

In order to obtain a certificate of innocence authorized by 28 U.S.C. § 2513(b), subsection (a) of the statute requires that the petitioner establish both of the following:

> (1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

> (2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

28 U.S.C. § 2513(a).

Reversal of a conviction for insufficiency of the evidence satisfies (a)(1). *Pulungan*, 722 F.3d at 984. Under the first section of (a)(2), "the district court must consider whether the petitioner is truly innocent—that is, whether he committed the acts charged and, if so, whether those acts constituted a criminal offense." *Betts*, 10 F.3d at 1283; 28 U.S.C. § 2513(a)(2). A petitioner does not meet this standard if his conduct "in connection with" the federal charge "constitute[s] an offense other than the one for which he was tried and convicted." *Id.* at 1284 (citing *Sinclair v. United States*, 109 F. Supp. 529, 531 (Ct. Claims 1953); *Weiss v. United States*, 95 F. Supp. 176, 179 (S.D.N.Y. 1951)). For example, while the conduct that formed the

basis for the prosecution may be held ultimately not to support federal criminal liability, it may nonetheless constitute a crime against the state in which the acts occurred.[3] *Osborn*, 322 F.2d at 842. The last portion of (a)(2) creates a bar to a certificate of innocence where the petitioner caused or brought about his own prosecution "by misconduct or neglect."[4] 28 U.S.C. § 2513(a)(2). *See also Betts*, 10 F.3d at 1284-86.

The innocence of the petitioner "must be affirmatively established." *Brunner*, 200 F.2d at 280. Although the statute is "entirely silent as to what procedure a court should follow in determining whether or not a petitioner is entitled to a certificate," in *Brunner* this Court recognized that the trial court may "rely primarily on the record of the trial of the petitioner and that other relevant facts could be presented orally or by affidavit." *Id.* at 279. The person seeking the certificate bears the burden of proof. *Pulungan*, 722 F.3d at 986; *Graham*, 608 F.3d at 171-72; *Burgess v. United States*, 20 Cl. Ct. 701, 704 (1990). The district court below assumed that the appropriate standard of proof was the preponderance of the evidence standard. (R. 139, Mem. Op. and Order, J.A. 57.) We agree that that preponderance of the evidence is the appropriate standard to apply in proceedings for a certificate of innocence. That standard is the "default rule for civil cases," *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1881 (2011), and as this Court recognized in *Brunner*, a request for a certificate of innocence is in essence a "civil case," 200 F.2d at 280.

In light of the civil nature of proceedings for a certificate of innocence and the resulting shifts in the burdens and standards of proof from a criminal proceeding, an appellate decision reversing a petitioner's conviction will not in all cases control the question of innocence. *Cf. Betts*, 10 F.3d at 1284 (holding that where a previous opinion reversing Betts' conviction

---

[3]The government cannot resort to proof of other crimes committed by the defendant to bar the certificate of innocence under this clause. "[T]he statutory phrase 'in connection with such charge' was meant to preclude proof of some contemporaneous, but unrelated crime to bar recovery." *Osborn*, 322 F.2d at 842. For this reason, we decline the government's invitation to affirm the district court on the alternative ground that Defendant was not innocent because "by his own admission, [he] was involved in criminal activity." *See* Pl.'s Br. at 19, n.6.

[4]We also decline the government's invitation to hold that Defendant's admitted involvement in the stolen auto scheme caused or brought about his prosecution for the firearm charge. As the Seventh Circuit explained in *Betts*, to fall under this provision, the petitioner "must have acted or failed to act in such a way as to mislead the authorities into thinking he had committed an offense," for example by fleeing from authorities, withholding exculpatory evidence, or "tak[ing] the fall" for someone else. 10 F.3d at 1285. Far from withholding exculpatory evidence or "taking the fall" for someone else, Defendant appears to have done everything possible to contest the firearm charge, in direct contrast to his actions in accepting his own culpability on the stolen auto charges by pleading guilty.

"[made] clear that Betts did not commit a criminal offense," that opinion conclusively determined his innocence and controlled the inquiry under 28 U.S.C. § 2513). In cases like the present one, "[e]ven though proofs … failed to establish guilt beyond a reasonable doubt, it [does not] preclude the court from finding that the petitioner had failed to establish that he did not commit the offense charged in the indictment." *Brunner*, 200 F. 2d at 279.

## 2. Application to Ernest Wayne Grubbs

In the present case, Defendant elected not to add anything to the record, so the district court properly relied on the evidence put forth at trial. Although that evidence was insufficient to sustain Defendant's firearm conviction beyond a reasonable doubt, as this Court previously held, reversal on that basis typically "leaves room for the possibility that the petitioner in fact committed the offense with which he was charged." *Betts*, 10 F.3d at 1284 (citing *Brunner*, 200 F.2d at 280). In considering the totality of the evidence, we conclude that there was sufficient evidence in the record permitting the district court to conclude that Defendant failed to establish his innocence by a preponderance of the evidence. Because the district court's factual finding that Defendant did possess the handgun is not against the clear weight of the evidence, we are constrained to affirm. *Smoot*, 246 F.3d at 641.

This district court had before it conflicting evidence concerning the relationship between Defendant and the nine-millimeter gun. The gun was found under Paul's bedding after Paul disclosed its presence to the officers performing the search. At trial, Paul testified about when and where he purchased the gun, and he testified that he had not seen Defendant with a gun during the altercation with Edward Jones. (J.A. 201.) This evidence would tend to support a certificate of innocence.

On the other hand, Edward Jones testified that Defendant threatened him with an automatic, dark-colored handgun. There is some factual basis in the record to connect the weapon Jones observed to the nine-millimeter handgun: Jones' description of the handgun he observed matches the basic physical attributes of the nine millimeter, and the altercation took place in the weeks leading up to the search that produced the handgun. As this Court previously held, the attributes identified by Jones "are too common to support a conviction for constructive possession." *Grubbs I*, 506 F.3d at 441. However, in a context where two firearms were

recovered during a search of the home and one of them (the nine millimeter) matched Jones' description, the district court would be within its rights to credit Jones' testimony as affirmative evidence that Defendant may have possessed the weapon. Additionally, although more than a week elapsed between the altercation where Jones saw Defendant with what appeared to be the gun and the search, that distance in time is not so significant that it defeats any inferential connection between Jones' observations and the nine millimeter discovered by law enforcement at the Grubbs residence.

Moreover, Jones' testimony is corroborated by his wife Reva, who also testified that she observed Grubbs on the evening of the altercation. She testified to seeing Defendant raise a gun as her husband pulled away as if to shoot into the trunk of her husband's car. She also testified that after her husband drove away Defendant approached her car and "squatted down beside [her] with a gun in his hands" to talk to her. (J.A. 140.)

In the final analysis, Defendant fails to prevail on his request for a certificate of innocence not because the government can prove his guilt beyond a reasonable doubt—the burden with respect to a request for a certificate of innocence does not rest with the government—but because Defendant has not satisfied his burden of establishing his innocence by a preponderance of the evidence.

In a proceeding where Defendant, rather than the government, bears the burden of proof, the Jones' testimony permits the district court to conclude that Defendant "failed to establish that he did not commit the offense charged in the indictment." *Brunner*, 200 F.2d at 279. The district court was tasked with resolving the conflicting evidence bearing on Defendant's alleged possession of the handgun, and we cannot say that its decision to credit evidence adverse to Defendant constituted an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the district court's order denying Defendant's motion for a certificate of innocence is **AFFIRMED.**